## VAN BUREN *v.* UNITED STATES.

*(District Court, D. Indiana.   August 15, 1888.)*

1. UNITED STATES COMMISSIONERS—EXAMINATION OF OFFENDER—WAIVER.
   Rev. St. Ind. 1881, § 1628, makes it the duty of a justice, in a criminal proceeding, to docket and hear the cause, and either acquit, convict, and punish, or hold to bail the offender.   Section 1634 requires a justice to recognize a defendant charged with felony, if upon the hearing he is of opinion that he should be held.   Section 1639 provides that a justice shall not discharge a defendant against whom the proper offense has not been charged, but shall cause the proper offense to be charged, and recognize him to answer it, and also recognize any witness deemed important.   These sections are made applicable to United States commissioners' examinations held in Indiana, by Rev. St. U. S. § 1014.   *Held,* that they contemplate a trial and hearing, and a commissioner is not bound to accept an offer of the accused to waive examination, but may suspend the examination or not, as he deems best for the public interest.
2. SAME—RIGHT TO COMPENSATION—ERRONEOUS DECISION AS TO JURISDICTION.
   Where an affidavit for arrest is such in form and substance as fairly to call for the deliberate judgment of a United States commissioner whether or not a criminal violation of some federal enactment is charged, and he, in good faith, holding it sufficient, proceeds with the examination, he is entitled to the fees allowed by law, though his decision was erroneous.
3. SAME—FORGERY OF TALLY-PAPERS—FEDERAL COURTS—JURISDICTION.
   Forging or unlawfully tampering with the tally-papers or other returns, which show, in addition to the number of votes cast for a member of congress, the number of votes cast for state officers at the same polls, is an offense against the federal election laws, of which the federal courts and commissioners have jurisdiction.

At Law.    On demurrer to answer.
*Kealing & Hugg,* for plaintiff.
*Emory B. Sellers,* Dist. Atty., for the United States.

Woods, J. No formal or technical objections have been made either to the complaint or to the answers, and the questions to be decided may be disposed of without a presentation of the pleadings.    The action is brought under the act of congress of March 3, 1887, (chapter 359,) to recover compensation for services claimed to have been rendered by the plaintiff as a commissioner of the circuit court for this district.    The services were rendered in the case of the *United States* v. *William F. A. Bernhamer and others,* brought before the commissioner upon an affidavit, a copy of which is set out in the report of the case, *Ex parte Perkins,* 29 Fed. Rep. 900; and upon the authority of that case it is insisted that the commissioner acted in the matter without jurisdiction, and therefore is entitled to no compensation.    The claim was presented for allowance, and was rejected by the comptroller of the treasury department in May, 1887, after the passage of the act of congress; and consequently the case is not within the interpretation placed on the proviso of that act in *Bliss* v. *U. S.,* 34 Fed. Rep. 781.    It is shown that the plaintiff was engaged in the hearing in question for 12 days; and, as it does not appear when the question of jurisdiction was mooted, it may be presumed that it was not raised before the last day, or, if raised sooner, that it was held under advisement until that time; so that, broadly stated, the proposition of the government is that its commissioners, at their peril in every instance, whether moved thereto by either party or not, must decide upon the sufficiency of the affidavit presented to confer jurisdiction, and, if a hearing be proceeded in without jurisdiction it shall be without right to compensation, even for the time given to the consideration and decision of that question.    To so establish the law would, as it seems to me, impair the public service in this important branch; or if, in many instances, the public interest should not suffer, it would be, as this case strongly illustrates, at the expense of private right.    I think the safe and proper rule on this subject must be that if the affidavit is such in form and substance as fairly to call for the deliberate judgment of the commissioner, whether or not a criminal violation of some federal enactment is charged, and the commissioner, in good faith, holding the presentment sufficient, proceeds with the examination, he will be entitled to the fees allowed by law, though it should turn out that his decision was erroneous.    However, as was pointed out in *U. S.* v. *Coy,* 32 Fed. Rep. 543, it was not held in *Ex parte Perkins* that the affidavit in the case was absolutely and in itself insufficient under the law to give jurisdiction.    The decision on that point was based largely upon an agreement or concession of counsel that "the specific facts stated in the affidavit" were "all the facts in the case," and on that admission it was held that the commissioner was without power to proceed further.    But, besides the specific facts stated, there is in the affidavit a charge in general words, quite material to the question of jurisdiction, namely: "And otherwise to change, alter, and forge said tally-sheets and said returns thereon at said election."    Moreover, the Indiana Statutes (section 1639, Rev. St. 1881) in respect to preliminary examinations before justices of the peace

provide (and the same rule applies to federal circuit court commissioners conducting examinations in this state) that if "it appears to such justice that a mistake has been made in charging the proper offense, or that he is guilty of an offense not charged, the justice shall not discharge the defendant, if there appears to him to be good cause to detain him in custody; but he must cause an affidavit charging the proper offense to be made against the defendant, and recognize him to answer the same, and, if necessary, also recognize the witnesses to appear and testify." If, therefore, it be conceded, as declared in *Ex parte Perkins*, that under the laws of Indiana "a tally-paper contains a separate statement of the votes cast for each candidate for every office, and, although it is one in form, it is several in its essence and character," and that, therefore, an alteration or forgery of such papers in respect to state or local officers alone could not be deemed to affect the election of a congressmen, it is still true that the general terms of this affidavit were broad enough to embrace the election in respect to the congressmen, and to establish the jurisdiction of the commissioner; it being in his power to require the general averments to be made more specific, or even a new affidavit specifying a different offense, according to the proofs adduced. It was doubtless competent and proper enough for counsel, in order to obtain the opinion of the court upon the specific facts stated in the affidavit, to make such an agreement as was made in *Ex parte Perkins*, but the decision so made and limited can have, and, it is to be presumed, was designed to have, no conclusive effect upon the commissioner's right to compensation for his services in the matter, or upon the question of jurisdiction considered from a broad stand-point. Upon the facts stated in this affidavit, and other facts proved at the examination had under it before this agreement of counsel was made, the grand jury of this court, acting upon a somewhat different phase of the law, reported indictments which have been upheld both in the circuit court and in the supreme court, (see *In re Coy*, 31 Fed. Rep. 794, and *Ex parte Coy*, 127 U. S. 731, 8 Sup. Ct. Rep. 1263;) and consequently, as can now hardly be disputed, it was competent for the commissioner to have held the accused under recognizance, if not to answer the charge as brought, certainly an amended one, formulated according to the proofs adduced; and, this being so, he is entitled to compensation, unless there be other good reason to the contrary.

Speaking to the proposition that the certificate made by the board of election "is to be deemed a separate document in respect to each candidate voted for," Justice HARLAN says:

"In these views I do not concur. It was conceded in argument, and it may be inferred from the statutes, that the certificate in question was, in fact, one paper, in that it stated the result of the election as to each candidate. So, also, as to the copy of the tally-paper and poll-list placed in the hands of the inspector. They were none the less documents in regard to an election for representative in congress because they also showed the number of votes cast at the same polls for state officers. * * * If mutilated or changed before they reached the board, [of canvassers,] their value as legal evidence in regard to the election both for state and national officers might be impaired or

destroyed. If skillfully altered by bad men, the will of the people, as expressed at the polls, might be defeated. Common prudence, therefore, suggested the necessity of guarding against every possibility of such mutilation or alteration."

The supreme court, in its opinion, says:

"The charge is that the conspirators unlawfully and feloniously induced the election officers to omit to perform their duty in this respect; which is, in general, conceded to be expressive of an evil intent. But counsel demand something more than this general evil intent in tampering with the poll-lists, tally-papers, and certificates, although it is not denied that the object of the parties accused, in inducing the election officers to violate their duty, proceeded from a criminal intent, or that it was done for the purpose of affecting the returns contained in the papers that were withheld, or exposing them to the danger of mutilation and alteration. It is said, however, that, since the evil intent is not shown to have been specifically aimed at the returns of the vote for congressman, the statutes of the United States can have no force, so far as the infliction of any penalty is concerned; and it is asserted that congress had no power to provide for any punishment where no intent affecting the congressional election is averred. It would be a very singular principle to establish, that, where a man was charged with a homicide, caused by maliciously shooting into a crowd, with the purpose of killing some person against whom he bore malice, but with no intent to injure or kill the individual who was actually struck by the shot, he should be held excused, because he did not intend to kill that particular person, and had no malice against him. The analogy of this example to the present case is close. The persons accused did desire and intend to interfere with the election returns, and they did purpose to falsify those returns, as to some of the persons, at least, who were then voted for as candidates. It is argued on their behalf that because it is not averred in the indictment that they intended to falsify the election returns with regard to the congressional vote, or to affect those particular returns, it is to be held bad. It is also insisted that the felonious intent had relation to the action of inducing the officers to omit the duty of keeping carefully the poll-books and tally-sheets; and, although the records of the votes for congressman might possibly also suffer along with a number of other persons who might be affected by that omission, yet, because there was not in the minds of the conspirators the specific intent or design to influence the congressional election, they are not to be held liable under this statute. The object to be attained by these acts of congress is to guard against the danger and the opportunity of tampering with the election returns, as well as against direct and intentional frauds upon the vote for members of that body The law is violated whenever the evidences concerning the votes cast for that purpose are exposed or subjected in the hands of improper persons or unauthorized individuals to the opportunity for their falsification, or to the danger of such changes or forgeries as may affect that election, whether they actually do so or not, and whether the purpose of the party guilty of thus wresting them from their proper custody and exposing them to such danger might accomplish this result."

Bearing more directly on the subject of jurisdiction, in the same opinion, occurs the following passage, the first part of which is a quotation from the opinion in *Ex parte Watkins*, 3 Pet. 193:

"'An imprisonment under a judgment cannot be unlawful, unless that judgment be an absolute nullity; and it is not a nullity if the court has general jurisdiction of the subject, although it should be erroneous. The circuit court for the District of Columbia is a court of record, having general juris-

diction over criminal cases. An offense cognizable in any court is cognizable in that court. If the offense be punishable by law, that court is competent to inflict the punishment. The judgment of such a tribunal has all the obligation which the judgment of any tribunal can have. To determine whether the offense charged in the indictment be legally punishable or not, is among the most unquestionable of its powers and duties. The decision of this question is the exercise of jurisdiction, whether the judgment be for or against the prisoner. The judgment is equally binding in the one case and in the other, and must remain in full force, unless reversed regularly, by a superior court capable of reversing it.'

"It may be said that this language is too broad, in asserting that, because every court must pass upon its own jurisdiction, that such decision is itself the exercise of a jurisdiction which belongs to it, and cannot, therefore, be questioned in any other court. But we do not so understand the meaning of the court. It certainly was not intended to say that because a federal court tries a federal prisoner for any ordinary common-law offense, as burglary, assault and battery, or larceny, with no averment or proof of any offense against the United States, or any connection with a statute of the United States, and punishes him by imprisonment, that he cannot be released by *habeas córpus,* because the court which tried him had assumed jurisdiction. In all such cases, when the question of jurisdiction is raised, the point to be decided is whether the court has jurisdiction of that class of offenses. If the statute has invested the court which tried the prisoner with jurisdiction to punish a well-defined class of offenses,—as forgery of its bonds, or perjury in its courts,—its judgment as to what acts were necessary under these statutes to constitute the crime is not reviewable on a writ of *habeas corpus.*"

In the light of this opinion, I think it may be said that any forging or unlawful tampering with the tally-papers or other returns containing evidence in respect to the congressional election comes clearly within "a class of offenses" of which the federal courts and commissioners have jurisdiction, and the class may be designated as offenses against the federal election laws.

The fifth paragraph of the answer shows that the accused parties, when arraigned before the commissioner, offered to waive examination, and to enter into the proper recognizance, but the commissioner refused to accept the waiver, and proceeded to hear testimony; and the government insists that for the time so employed the commissioner is entitled to no compensation. The question whether a commissioner, justice of the peace, judge, or other officer conducting a preliminary examination is bound to accept an offer by the accused to waive examination is an important one, and, so far as I know, there is no reported decision on the subject. By the federal statute (section 1014 of the Rev. St.) the commissioner's examination must be held "agreeably to the usual mode of process against offenders" in the state, and "recognizances of the witnesses for their appearance to testify in the case" are to be taken and returned to the clerk of the court. The provisions of the Indiana statutes on the subject are in article 6, Rev. St. 1881, §§ 1625–1645. These provisions all contemplate a trial or hearing, and some of them are inconsistent with a waiver of the hearing, though the contrary practice is well known to be general. Section 1628 makes it "the duty of such justice to docket * * * and to hear the cause, and either acquit, convict,

and punish, or hold to bail the offender." By section 1634, "when the offense charged is a felony, and the justice upon the hearing is of the opinion that the accused should be held to answer such charge, he shall be recognized," etc. The provisions of section 1639 have already been quoted. By section 1642, "whenever any justice shall hold any prisoner to bail or commit him to jail in default of bail, he shall also recognize, with or without surety, such witnesses as he may deem important, to appear and testify before the court." Whether or not a witness is important can ordinarily be best determined by hearing his testimony, and if it is to be determined whether the witness shall be committed, in default of recognizance with the required surety, it may be necessary to examine other witnesses, whose testimony might make his unnecessary, or so unimportant as to render recognizance with surety unnecessary; and without a hearing it would be impossible to comply with the provisions of section 1639. But, aside from the literal terms of the statutes, there are considerations of public policy upon which, in the absence of express provision to the contrary, it must be held to be in the discretion of the examining officer to suspend the examination or not, upon a waiver by the accused, as he shall deem best for the public interest. If an arrest be made without good ground, an examination will show the fact, and save the expense of an inquiry by the grand jury. The arrested party, sometimes when not guilty, in order to divert suspicion from others, but more frequently when guilty, and in order to aid the escape of confederates in the crime, is quite willing by waiving examination to suppress present inquiry; and oftener still, perhaps, this is done by the accused in the hope of suppressing the evidence against himself, or of gaining some like advantage from delay. An immediate development of the evidence and testimony is sometimes essential to the ends of justice, and it would be strange indeed if the laws are so framed, or the courts disposed so to interpret them as to deny the government this important power. Its exercise, unless wantonly abused, as almost any power may be abused, can harm no one. Ordinarily, I doubt not, an offer of the accused to waive an examination should be accepted; but if the commissioner be convinced that the public interest will be better subserved by an investigation, and especially if the district attorney request it, he may and should proceed to a full hearing. The demurrers to the fourth and fifth paragraphs of answer are therefore sustained.