PEOPLE *v.* WILCOX.

1. INDICTMENT AND INFORMATION—ONE-MAN GRAND JURY—AUTHOR-
   ITY—GAMBLING—VICE—PROTECTION BY PUBLIC OFFICERS.
   Under petition for investigating the existence of gambling and
   the possible protection thereof by any officials in the county,
   and matters relating thereto, including any failure to enforce
   the criminal law prohibiting the operation of gambling insti-
   tutions and possible connection between such enterprises and
   law enforcement officials, in which petition it is stated there
   was probable cause to suspect that certain crimes, causes and
   misdemeanors had been committed in the county, particularly
   gambling, with the knowledge and consent of law-enforcing
   officials, the one-man grand jury did not exceed its authority
   in returning an indictment including all the conspirators and
   the entire conspiracy for the purpose of collecting money from
   all types of illegal business including vice where testimony
   shows that such was the purpose (3 Comp. Laws 1929, § 17217).

2. CONSPIRACY—TESTIMONY AFFECTING ONE DEFENDANT ONLY.
   In prosecution of certain public officials and others for conspiracy
   to obstruct justice, where testimony affecting one defendant
   only was properly received and instructions given jury twice
   that such testimony could not be binding on anyone else ex-
   cept such defendant until the conspiracy was established,
   where such conspiracy, as established, included a second de-
   fendant, he may not complain as to admission of such testi-
   mony, it being one of the penalties suffered by participants in
   conspiracies.

3. SAME—EVIDENCE.
   Testimony, material in proof of conspiracy as to some defend-
   ants accused thereof, may affect all conspirators if the con-
   spiracy is once established.

4. CRIMINAL LAW—QUESTIONS REVIEWABLE—EVIDENCE.
   Specific objection as to testimony received at trial for conspiracy,
   made for first time on appeal, is not discussed.

5. SAME—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED CON-
   SPIRATOR.
   Testimony as to conversation with a conspirator had before he
   had died prior to trial was properly received in prosecution of

surviving conspirators for conspiracy to obstruct justice, where their relations with the deceased were part of the *res gestae,* objection that such matters were equally within the knowledge of deceased and not subject to disproof not being a proper one (3 Comp. Laws 1929, § 14219).

6. SAME—CONSPIRACY—SAVING QUESTION FOR REVIEW.
    Claim of error in admission of certain receipts made by or under supervision of the witness who produced them in prosecution of various county officers and other persons for conspiracy to obstruct justice by enabling the operation of certain illegal enterprises *held,* without merit where no objection appears to have been made to introduction of receipts in evidence.

7. SAME—PRELIMINARY EXAMINATION—WAIVER.
    Since the State as well as party accused of crime is entitled to a prompt examination and determination by the examining magistrate in all criminal cases, it was not an abuse of discretion on the part of such magistrate to require one of several persons charged with conspiracy to submit to a preliminary examination notwithstanding he had waived it and thereby determine if there was probable cause to hold him for trial or perpetuate testimony of witnesses who might disappear or die before trial (3 Comp. Laws 1929, § 17193).

8. SAME—MISCARRIAGE OF JUSTICE.
    Various claims of error in the trial of persons charged with conspiracy to obstruct justice, lasting over three months, which, even if meritorious, could not have affected the result or resulted in a miscarriage of justice are not discussed (3 Comp. Laws 1929, § 17354).

Appeal from Wayne; Pugsley (Earl C.), J., presiding. Submitted June 11, 1942. (Docket No. 52, Calendar No. 41,723.) Decided November 24, 1942. Rehearing denied December 22, 1942. Certiorari denied by Supreme Court of the United States April 5, 1943.

Thomas C. Wilcox was convicted of conspiracy to obstruct justice. Affirmed.

*George S. Fitzgerald* and *Frank G. Schemanske,* for appellant.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Thomas A. Kenney,* Assistant Attorney General, and *Chester P. O'Hara,* Special Prosecuting Attorney, for the people.

BUTZEL, J.  Thomas C. Wilcox, one of the defendants in the case of People v. Wilcox, McCrea, et al., filed a separate appeal.  It is presented together with the separate appeals of other codefendants, and comes to us on the same record that was presented in the appeals of Mr. McCrea and the other separate appellants.  In the opinions filed this day * in the appeals of defendant McCrea and other codefendants, we discussed and decided almost all of what we regard as the important questions raised by appellant on his appeal.  We, therefore, find it unnecessary to repeat what was said in the opinions deciding the appeals of McCrea and others, but include what was said therein by reference and without repetition.  There are but few other questions raised by appellant Wilcox that in our opinion require discussion.

The general outline of the charges against appellant Wilcox and others is set forth in the statement of fact in the McCrea opinion.  As the question of the weight of the evidence only was raised by appellants McCrea, Garska and Scaduto and not by appellant Wilcox or any of the other codefendants, it becomes unnecessary to go into more detail in this opinion in regard to the testimony offered by the prosecution.

Appellant claims that, as the Honorable Homer Ferguson, Circuit Judge, was designated to make an investigation into certain conditions claimed to have

---

* See *People* v. *McCrea, ante,* 213; *People* v. *Malone, post,* 297; *People* v. *Staebler, post,* 298; *People* v. *Stambaugh, post,* 300; *People* v. *Way, post,* 303; *People* v. *Scaduto, post,* 307; *People* v. *Garska, post,* 313.—REPORTER.

existed in Wayne County, thus he was limited in scope in inquiring into gambling conditions; that he could not investigate other vice conditions. Unfortunately, the petition and order for the investigation have not been included in the record. The petition for the investigation of suspected offenses was made in accordance with 3 Comp. Laws 1929, § 17217 (Stat. Ann. § 28.943). The special prosecutor, however, calls our attention to the fact that the petition has been before us in other cases and that we considered it in *Re Watson,* 293 Mich. 263. The petition, as shown in the *Watson Case,* was "for the purpose of investigating the existence of gambling and the possible protection thereof by any officials in Wayne County, and matters relating thereto, including any failure to enforce the criminal law prohibiting gambling and the operation of gambling institutions and possible connection between such enterprises and law enforcement officials." Through an abundance of caution, we have sent for the original petition and find that it stresses the corruption of law-enforcing officials in connection with such gambling. It further states that there was probable cause to suspect that certain crimes, causes and misdemeanors had been committed within the county of Wayne, State of Michigan, and particularly that such gambling has been permitted with the knowledge and consent of law-enforcing officials.

Appellant claims that a one-man grand jury, having been appointed for the special purpose of investigating gambling, could not go on a "fishing expedition" to investigate crime in general. Section 17217, 3 Comp. Laws 1929 (Stat. Ann. § 28.943), reads as follows:

"Whenever by reason of the filing of any complaint, which may be upon information and belief, any justice of the peace, police judge or judge of a

court of record shall have probable cause to suspect that any crime, offense, misdemeanor or violation of any city ordinance shall have been committed within his jurisdiction, and that any person may be able to give any material evidence respecting such offense, such justice or judge in his discretion may, and upon the application of the prosecuting attorney, or city attorney in the case of suspected violation of ordinances, shall require such person to attend before him as a witness and answer such questions as such justice or judge may require concerning any violation of law about which he may be questioned; and the proceedings to summon such witness and to compel him to testify shall, as far as possible, be the same as proceedings to summon witnesses and compel their attendance and testimony, and such witnesses shall be entitled to the same compensation as in other criminal proceedings."

The prosecution claims that the statute does not restrict the scope of the investigation when once begun. The question before us in the instant case is further limited to the query whether, in an investigation involving corruption and connivance of public officials in permitting commercialized gambling, if the testimony develops that the same persons who exacted payments from gambling houses also collected from the operators of houses of prostitution and other illegal enterprises and paid all of such sums to the same officials, an indictment should not include the entire conspiracy and all the conspirators.

In the case of *Hale* v. *Henkel*, 201 U. S. 43, 63 (26 Sup. Ct. 370, 50 L. Ed. 652), Mr. Justice Brown quoted with approval from a lecture given by Mr. Justice Wilson of the United States supreme court as follows:

"It has been alleged that grand juries are confined, in their inquiries, to the bills offered to them, to the

crimes given them in charge, and to the evidence brought before them by the prosecutor. But these conceptions are much too contracted; they present but a very imperfect and unsatisfactory view of the duty required from grand jurors, and of the trust reposed in them. They are not appointed for the prosecutor or for the court; they are appointed for the government and for the people; and of both the government and people it is surely the concernment that, on one hand, all crimes, whether given or not given in charge, whether described or not described with professional skill, should receive the punishment which the law denounces.''

The testimony shows that the conspiracy was for the purpose of collecting money from all types of illegal business including vice. The one-man grand jury did not exceed its authority.

Appellant Wilcox claims it was error to introduce testimony in regard to the suicide of Mrs. Janet McDonald and the murder of her child, and the letters she left claiming corruption of public officers. It was shown that defendant McCrea not only refused to do anything in regard to the charges but even attempted to stop an investigation. This became very material as far as defendant McCrea was concerned and the testimony was admitted as to defendant McCrea. The court distinctly stated that the testimony in regard to Mr. McCrea's conversation with Mr. Dowling could not be binding on anyone except defendant McCrea until the conspiracy was established. The court repeated this statement. The testimony was material as far as McCrea was concerned and properly received in evidence. It is true that, frequently, testimony introduced in a conspiracy case may not be binding upon all of the conspirators, but, nevertheless, it may be material in the proofs against some defendants and if the

conspiracy is once established, such testimony may affect all conspirators. It is one of the penalties that they suffer.

Specific objection is now made for the first time to the testimony in regard to Mrs. McDonald's letters. As such objection was not made at the trial, we need not discuss it.

The testimony showed that one Elik Gell took a very prominent part in the conspiracy. At the request of Block, the collector for defendants McCrea and Colburn, Gell made collections from various illegal business in the city of Hamtramck. To prevent interference with various forms of vice in the Hamtramck district, where it flourished, Gell paid Block $2,800 a month for the prosecutor's office. He also collected for the sheriff's office. Block also testified that he personally paid to Gell monthly sums for the sheriff's office so that Block could operate a handbook in Hamtramck. Block, testifying to his dealings with Gell, was asked: ''Tell me about this conversation with Gell.'' Immediately the attorney for one of the defendants objected. He stated that unless there was some one else present it was within the knowledge of deceased* and ''how can we disprove it.'' Later on he further stated that the only theory on which you can introduce this is on the ground of agency. ''If this man was an agent of Elik Gell, he might testify. If Elik Gell is dead, how can he testify?'' The special prosecutor stated that the rule defendant's counsel invoked only applied to civil cases; further, that Gell was a conspirator and codefendant who had died prior to the trial. The objection was not properly made. In appellant's brief, however, the argument is made that the accused always has the right to be con-

---

* See 3 Comp. Laws 1929, § 14219 (Stat. Ann. § 27.914).—RE-PORTER.

fronted with the witnesses against him and that there would be no way of disproving a conversation had with the deceased person in his lifetime.

The relations with Elik Gell were part of the *res gestae* and everything that Gell did was in furtherance of the conspiracy. Our attention has been called to only one case of very high authority where the precise question has arisen. A similar objection was made as to the admissibility of testimony showing what the conspirator, who died prior to the trial, had said in his lifetime in furtherance of the conspiracy. In *Delaney* v. *United States*, 263 U. S. 586 (44 Sup. Ct. 206, 68 L. Ed. 462), the court said:

"The only exception, however, was of testimony given by one of the conspirators of what another one of the conspirators (the latter being dead) had told him during the progress of the conspiracy. We think the testimony was competent and within the ruling of the cases. *American Fur Co.* v. *United States*, 2 Pet. (27 U. S.) 358 (7 L. Ed. 450); *Nudd* v. *Burrows*, 91 U. S. 426, 438 (23 L. Ed. 286); *Wiborg* v. *United States*, 163 U. S. 632 (16 Sup. Ct. 1127, 41 L. Ed. 289). And it has been said that the extent to which evidence of that kind is admissible is much in the discretion of the trial judge. *Wiborg* v. *United States,* 163 U. S. 632, 658 (16 Sup. Ct. 1127, 41 L. Ed. 289). We do not think that the discretion was abused in the present case.

"There is nothing in the record which justifies a reversal of the case, and the judgment of the circuit court of appeals is affirmed."

Appellant claims that the court erred in admitting certain exhibits produced by witness Pines, a collector for the sheriff's office, in order to show the record of alleged payments by certain defendants to Pines for the sheriff's office. Pines testified in re-

gard to the exhibits which consisted of white and yellow slips that the white slips were statements made under his supervision and direction for moneys collected from illegal enterprises and that the yellow slips were his original statements made by himself; that copies of the yellow slips were furnished to defendant Staebler of the sheriff's office. The witness testified that he had kept records of receipts, that defendant Staebler of the sheriff's office wanted such records kept, that he furnished three copies of them, one for appellant Wilcox, one for Staebler and one for McGrath, the undersheriff, who turned State's evidence. Pines stated that the yellow slips were his original records. No objection apparently was made to the introduction of these exhibits. Even if the claim of error had any merit whatsoever, no objection having been made, it need not be discussed any further.

Appellant Wilcox further claims that although he waived examination before the examining magistrate, the latter nevertheless forced him to an examination in violation of his constitutional rights; that the examining magistrate may not conduct such examination after waiver thereof by the accused. We do not need to discuss whether there would have been any merit to such objection under the former law (3 Comp. Laws 1915, § 15666). The new criminal code, 3 Comp. Laws 1929, § 17193 (Stat. Ann. § 28.919), distinctly provides that the State and accused shall be entitled to prompt examination and determination by the examining magistrate in all criminal cases, et cetera. The State may be very much interested in determining whether or not there is sufficient probable cause to hold a respondent for trial, or it may desire to perpetuate the testimony in the event that a witness shall disappear or die before the trial. The rule is well expressed in *Van*

*Buren* v. *United States,* 36 Fed. 77, 82, from which we quote the following excerpt:

"The arrested party, sometimes when not guilty, in order to divert suspicion from others, but more frequently when guilty, and in order to aid the escape of confederates in the crime, is quite willing by waiving examination to suppress present inquiry; and oftener still, perhaps, this is done by the accused in the hope of suppressing the evidence against himself, or of gaining some like advantage from delay. An immediate development of the evidence and testimony is sometimes essential to the ends of justice, and it would be strange indeed if the laws are so framed, or the courts disposed so to interpret them as to deny the government this important power. Its exercise, unless wantonly abused, as almost any power may be abused, can harm no one."

Also, see, *State, ex rel. Attorney General,* v. *East Baton Rouge Parish Judge,* 104 La. 237 (28 South. 996); *State* v. *Pigg,* 80 Kan. 481 (103 Pac. 121, 18 Ann. Cas. 521); *State* v. *Hoben,* 36 Utah, 186; *Lyon* v. *State,* 55 Okla. Crim. 226 (28 Pac. [2d] 598).

It would be somewhat unusual if on a trial lasting over three months and in which a record of over two thousand pages is presented to us some slight errors might not have crept in. We have examined the other claims of error made by appellant and, even if there is any merit to them, they could not have affected the result or resulted in a miscarriage of justice. 3 Comp. Laws 1929, § 17354 (Stat. Ann. § 28.1096). It is, therefore, unnecessary to discuss them.

Judgment affirmed.

CHANDLER, C. J., and NORTH, STARR, BUSHNELL, and SHARPE, JJ., concurred. BOYLES and WIEST, JJ., did not sit.