PEOPLE v DUNCAN

PEOPLE v HARRIS

PEOPLE v ALVIN BROWN

OPINION OF THE COURT

1. CRIMINAL LAW—GRAND JURY—WITNESSES—TRANSCRIPTS—MOTION FOR TRANSCRIPT.

A person accused of a crime by any grand jury has the right to a transcript of his testimony and such part of the records, including the testimony of other witnesses before the grand jury, touching on the issue of his guilt or innocence of the crime charged; to obtain it he must file a motion with the circuit judge presiding in the county in which the grand jury issuing the indictment was convened (GCR 1963, 787).

2. INDICTMENT AND INFORMATION—GRAND JURY INDICTMENTS—CONSTITUTIONAL LAW—STATES—PRELIMINARY EXAMINATIONS.

The Federal Constitution does not require the states to initiate criminal prosecutions by grand jury indictment, nor does it require a preliminary examination as a condition precedent to prosecution by the filing of an information.

3. CRIMINAL LAW—PRELIMINARY EXAMINATIONS—GRAND JURY.

Historically, the purpose of the preliminary examination was to provide a means for proceeding against an accused *before* presentation of the charge to a grand jury, not afterward.

4. CRIMINAL LAW—STATUTES—PRELIMINARY EXAMINATIONS—INDICTMENT AND INFORMATION—GRAND JURY INDICTMENTS.

The phrase "in all criminal causes", which appears in a statute providing for prompt preliminary examinations, did not create a new guarantee of a preliminary examination *after* a grand jury indictment; the phrase was simply a recognition of past

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 331.
[2] 21 Am Jur 2d, Criminal Law § 444.
[3–7, 9] 21 Am Jur 2d, Criminal Law §§ 440–451.
[8] (no references).

practices where a preliminary examination was given *before* the filing of an information or an indictment (MCLA 766.1).

5. CRIMINAL LAW—PRELIMINARY EXAMINATIONS—INDICTMENT AND INFORMATION—GRAND JURY INDICTMENTS.

In the absence of a clear statutory provision for a preliminary examination following presentment or indictment by a grand jury, there has never been such a right.

6. CRIMINAL LAW—PRELIMINARY EXAMINATIONS—PROBABLE CAUSE.

The primary function of a preliminary examination is to determine if a crime has been committed and, if so, if there is probable cause to believe the defendant committed it.

7. CRIMINAL LAW—PRELIMINARY EXAMINATIONS—EVIDENTIARY RULES.

The preliminary examination is keyed to modern methods of investigation carried on by the police and prosecutors; a defendant's rights are recognized and evidentiary rules are followed.

8. CRIMINAL LAW—PRELIMINARY EXAMINATIONS—CRITICAL STAGE.

The preliminary hearing is a critical stage of Michigan's criminal process.

9. CRIMINAL LAW—PRELIMINARY EXAMINATIONS—FELONIES.

In three cases where the defendants were indicted by citizens' grand juries and in all pending cases in which the right to a preliminary examination was asserted, prior to trial and is presently being asserted, such right shall be accorded to the defendant; in all future cases wherein a defendant is accused of a felony, the right to a preliminary examination shall exist.

DISSENTING OPINION

T. E. BRENNAN, J.

See headnote 5.

Appeal from Court of Appeals, Division 1, Quinn, P. J., and T. M. Burns and Danhof, JJ., reversing in part and remanding Recorder's Court of Detroit, John R. Murphy, J.; Division 2, McGregor, P. J., and Fitzgerald and Quinn, JJ., reversing Oakland, William R. Beasley, J.; and reversing and remanding Genesee, Elza H. Papp, J. Submitted May 3, 1972; June 8, 1972. (Nos. 11 May Term

1972, 11, 12 June Term 1972; Docket Nos. 53,434, 53,822, 53,836.) Decided October 31, 1972.

33 Mich App 241 reversed.

37 Mich App 179 reversed.

37 Mich App 292 reversed.

Pat Duncan was indicted by a grand jury for first-degree murder and conspiracy to commit first-degree murder. Defendant's pretrial motion for discovery granted. The people appealed to the Court of Appeals. Reversed in part and remanded. Defendant appeals. Reversed and remanded to trial court for further proceedings.

James J. Harris was indicted by a grand jury for sale of heroin. Defendant's motion for preliminary examination was granted. The people appealed to the Court of Appeals. Reversed. Defendant appeals. Reversed and remanded to trial court for further proceedings.

Alvin O. Brown, Jr., was indicted by a grand jury for conspiracy to violate gambling laws. Indictment dismissed. The people appealed to the Court of Appeals. Reversed and remanded. Defendant appeals. Reversed and remanded to trial court for further proceedings.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, *Patricia J. Boyle,* Assistant Prosecuting Attorney, *Thomas G. Plunkett,* Prosecuting Attorney, *Dennis Donohue,* Chief Appellate Counsel, *Robert F. Leonard,* Prosecuting

Attorney, and *Paul G. Miller, Jr.,* Chief Assistant
Prosecuting Attorney, for the people.

*Ernest Goodman, Neal Bush, Thomas Meyer,*
*Elliott Hall,* and *David Hood,* for defendant Duncan.

*John N. O'Brien,* for defendant James J. Harris.

*Jerome F. O'Rourke,* for defendant Alvin O.
Brown, Jr.

*Amicus Curiae:*

*Joel M. Shere, Sheridan Holzman, James K.*
*Robinson* (by *Neil H. Fink),* for American Civil
Liberties Union of Michigan.

*Allen & Tendler (Hartman, Beier, Howlett, Mc-*
*Connell & Googasian,* of counsel), for Angelo Di
Ponio.

ADAMS, J.

## I. *Facts and Proceedings*

A. *People of the State of Michigan v Pat Duncan*

On October 25, 1970, Pat Duncan, along with 14
other persons, was arrested and charged with first-
degree murder and conspiracy to commit first-de-
gree murder. On October 28, 1970, over defense
counsel's objection, a motion by the prosecutor was
granted in recorder's court to adjourn the prelimi-
nary examination until November 5, 1970.

On November 4, 1970, a Wayne County citizens'
grand jury issued an indictment charging the
same crimes as were charged in the previous

complaint and warrant. The complaint and warrant were dismissed. There was no preliminary examination.

Defendants filed a motion to quash the indictment or for a preliminary examination. It was denied. Defendants filed a motion for discovery, including a request for the grand jury testimony. Judge John R. Murphy granted the motion, allowing defense counsel to inspect the grand jury minutes one week prior to trial, and further ordering an *in camera* inspection of the minutes by the court for "an independent determination on the question of probable cause." The prosecutor was granted an emergency leave to appeal from this order by the Court of Appeals. That Court affirmed the part of the discovery order which did not relate to the grand jury testimony but stayed the order as to both uses of the grand jury minutes "pending formal decision on that point."

The trial court entered a formal order allowing defense counsel to view the grand jury minutes and ordering an *in camera* inspection by the court to determine whether there was "some legal basis in law and fact" for the indictments. Another appeal was taken and, on the basis of MCLA 767.19g; MSA 28.959(7) (added by 1970 PA 9); and *People v Thompson,* 122 Mich 411 (1899), the Court of Appeals held that neither defendants nor the trial judge could see the grand jury transcript prior to trial. *People v DeSaussure,* 33 Mich App 241 (1971).

Pat Duncan's case was severed from the trial of the other defendants on April 30, 1971 because of her physical condition. She was the only defendant to challenge the decision of the Court of Appeals. Her application for leave to appeal was granted by this Court. (385 Mich 786.)

B. *People of the State of Michigan v James J. Harris*

On May 26, 1971, a citizens' grand jury in Oakland County filed an indictment charging defendant with the sale of heroin. Defendant's motion for preliminary examination was granted by the trial court. Upon emergency appeal by the people to the Court of Appeals, that Court reversed. (37 Mich App 179.) We granted defendant's application for leave to appeal. (386 Mich 778.)

C. *People of the State of Michigan v Alvin O. Brown, Jr., et al*

On May 14, 1970, a Genesee County citizens' grand jury returned a true bill charging Alvin O. Brown, Jr., and others, with the crime of conspiracy to violate various Michigan gambling laws. The cause was assigned to a circuit judge for trial. Several defendants filed motions seeking a preliminary examination. On November 5, 1970, the circuit court filed a written opinion holding § 19g of 1970 PA 9 unconstitutional and dismissed the indictment. On appeal to the Court of Appeals, that Court reversed and remanded for trial. We granted leave to appeal. (386 Mich 788.)

II. *Grand Jury Records—Discovery*

In *People v Bellanca,* 386 Mich 708, 715–716 (1972), a majority of this Court held that:

"[A] person accused of a crime by any grand jury has the right to a transcript of his testimony and such parts of the record, including the testimony of other witnesses before the grand jury touching on the issue of his guilt or innocence of the crime charged. To obtain it

he must petition the circuit court of the county wherein the grand jury was impaneled therefor.

"In order to implement the procedure for obtaining custody of the material requested, we are today publishing a court rule. * * *

"The Bench and Bar are hereby advised that the provisions of MCLA 767.19g; MSA 28.959(7) are hereby superceded (See *Perin v Peuler* [on rehearing], 373 Mich 531, 541 [1964])."

The decision in *Bellanca* and the adoption of GCR 1963, 787, *Discovery of Grand Jury Proceedings,* cover the issues with regard to discovery of grand jury testimony and the validity of § 19g of 1970 PA 9 raised in these cases.

## III. *Right to Preliminary Examination*

The remaining critical issue in all three cases is whether a defendant indicted by a citizens' grand jury is entitled to a preliminary examination. The Federal Constitution does not require the states to initiate criminal prosecutions by grand jury indictment, *Hurtado v California,* 110 US 516; 4 S Ct 111; 28 L Ed 232 (1884), nor does it require a preliminary examination as a condition precedent to prosecution by the filing of an information, *Lem Woon v Oregon,* 229 US 586; 33 S Ct 783; 57 L Ed 1340 (1913).

The Michigan Constitution of 1835 provided that criminal felony prosecutions should be initiated exclusively on a presentment or indictment by a grand jury.[1] Sections 13 and 14 of RS 1846, ch 163,

---

[1] Art 1, § 11:

"No person shall be held to answer for a criminal offence, unless on the presentment or indictment of a grand jury, except in cases of impeachment, or in cases cognizable by justices of the peace, or arising in the army or militia when in actual service in time of war or public danger."

provided for preliminary examinations in connection with such grand jury proceedings.[2]

If the original procedure in Michigan had been to have the preliminary examination *after* a grand jury indictment, the statutory history would be a persuasive reason to hold in favor of such a preliminary examination; but, historically, the purpose of the preliminary examination was to provide a means for proceeding against an accused *before* presentation of the charge to a grand jury, not afterward. *Turner v People,* 33 Mich 363, 370 (1876). It is to be remembered that grand juries were not in continuous session and there was often a lapse of time between an arrest and an indictment. Thus, § 18 of 1846 RS, ch 163, provides for holding the prisoner until indictment or allowing him to be out on bail.[3]

The Michigan Constitution of 1850 omitted the requirement of a presentment or indictment by a grand jury, and by § 28, art 6, Judicial Department, set forth the rights of an accused.[4] In 1859,

___

[2] "Sec. 13. The magistrate before whom any person is brought, upon a charge of having committed an offence, and not cognizable by a justice of the peace, shall proceed as soon as may be, to examine the complainant, and the witnesses in support of the prosecution, on oath, in the presence of the prisoner, in regard to the offence charged, and in regard to any other matters connected with such charge, which such magistrate may deem pertinent."

"Sec. 14. After the testimony in support of the prosecution has been given, the witnesses for the prisoner, if he have any, shall be sworn and examined, and he may be assisted by counsel in such examination, and also in the cross-examination of the witnesses in support of the prosecution."

[3] "Sec. 18. If it shall appear that an offence not cognizable by a justice of the peace has been committed, and that there is probable cause to believe the prisoner guilty thereof, and if the offence be bailable by the magistrate, and the prisoner offer sufficient bail, it shall be taken, and the prisoner discharged, but if no sufficient bail be offered, or the offence be not bailable by the magistrate, the prisoner shall be committed to prison for trial."

[4] Art 6, § 28:

"In every criminal prosecution the accused shall have the right to a speedy and public trial by an impartial jury, which may consist of less

the Legislature enacted 1859 PA 138, which provided for prosecutions by information preceded by a preliminary examination. The new procedure was initiated to speed up the criminal process. It had the effect, in a large measure, of eliminating the grand jury since, although it was not abolished, prosecution by information replaced prosecution by a grand jury as a standard practice. *People v Annis,* 13 Mich 511, 514 (1865); *Yaner v People,* 34 Mich 286, 287 (1876). Grand jury proceedings continued to follow the former pattern of having no preliminary examination after presentment or indictment. Special Committee to Study and Report upon the One-Man Grand Jury Law, 26 MSBJ, September 1947, pp 55, 59; 8 Michigan Law & Practice, Criminal Law, § 91, p 114; Miller, *Informations or Indictments in Felony Cases,* 8 Minn L Rev 379, 381–382 (1924). The only significant change was the statutory recognition of the increased importance of the preliminary examination.[5]

During the late 1920's, there was much public concern about the slowness of the administration of justice. *Report of the Committee on Legislation and Law Reform,* 6 MSBJ 105, January 1927; Webster, *The Courts and Procedural Reform,* 6 MSBJ 191, March 1927. Prosecution by information was seen as speedier, more economical and efficient than prosecution by indictment. Moley,

than twelve men in all courts not of record; to be informed of the nature of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and have the assistance of counsel for his defense."

[5] Section 8 of 1859 PA 138 reads:

"No information shall be filed against any person for any offence, until such person shall have had a preliminary examination therefor, as provided by law, before a justice of the peace, or other examining magistrate or officer, unless such person shall waive his right to such examination * * * ."

This section is now in MCLA 767.42; MSA 28.982.

*The Initiation of Criminal Prosecutions by Indictment or Information,* 29 Mich L Rev 403 (1931); Moley, *The Use of the Information in Criminal Cases,* 17 ABAJ 292 (1931). Michigan already had provided for prosecutions by information but reform was still felt to be necessary. A Committee of Inquiry into Criminal Procedure published a report and schedule of revisions of the Code of Criminal Procedure in 1927. Their recommendations were incorporated in 1927 PA 175. Section 1 of chapter VI of 1927 PA 175 read:

"The state and accused shall be entitled to a prompt examination and determination by the examining magistrate *in all criminal causes* and it is hereby made the duty of all courts and public officers having duties to perform in connection with such examination, to bring them to a final determination without delay except as it may be necessary to secure to the accused a fair and impartial examination."[6] (Emphasis added.)

The Committee gave as their summary to this amendment:

"Sec. 1. Both state and accused entitled to speedy examination. (new) This section emphasizes the fact that a speedy examination by the magistrate is at all times essential." (Schedule submitted by Committee of Inquiry into Criminal Procedure, p 9.)

The clear intent of the amendment was to provide for and stress the need of prompt examinations. If, by this section, the Legislature had meant to add another preliminary examination *after* a grand jury indictment, it would have done so with more direct language than that just quoted as such a procedure would have been a radical change from past practices. When the Legislature did

---

[6] This is the same wording as the present MCLA 766.1; MSA 28.919.

intend to provide for a preliminary examination after a one-man grand jury indictment, it did so by specific statutory language. (1927 PA 175, ch VII, § 4, and MCLA 767.4; MSA 28.944.)

Today, a preliminary examination is rarely accorded prior to a grand jury indictment since a grand jury is no longer the sole means by which the people can proceed against one accused of crime and its use is largely confined to investigating criminal activity. However, modern day practice cannot change the clear meaning of the phrase "in all criminal causes". Contrary to defendants' claim, the phrase did not create a new guarantee of a preliminary examination *after* a grand jury indictment. The phrase was simply a recognition of past practices where a preliminary examination was given *before* the filing of an information or an indictment.

The conclusion is inescapable that, in the absence of a clear statutory provision for a preliminary examination following presentment or an indictment by a grand jury, there has never been such a right.

The primary function of a preliminary examination is to determine if a crime has been committed and, if so, if there is probable cause to believe the defendant committed it. *People v Bellanca, supra.* See, also, *People v McLean,* 230 Mich 423, 425 (1925); *People v Asta,* 337 Mich 590 (1953); *People v Hatt,* 384 Mich 302 (1970); *People v Walker,* 385 Mich 565 (1971).

The preliminary examination has grown in importance and significance both for the prosecution and a defendant. The advantage of a preliminary examination for a defendant was pointed out in *In re Palm,* 255 Mich 632, 635 (1931). Justice WIEST, writing for the Court, stated:

"It is urged, in behalf of Palm, that the first Constitution of the State, adopted in 1835, expressly required all criminal prosecutions for felonies to be by presentment or indictment of a grand jury (Const. 1835, art. 1, § 11), and, subsequent constitutions being silent on the subject, the mandate still prevails. * * * . The mandate in the Constitution of 1835 limited the legislative power in the respect mentioned, while subsequent Constitutions left the subject free to legislative control, and, therefore, the legislature rightly could and did provide for criminal prosecutions by information. See Act No. 138, Laws of 1859, 3 Comp. Laws 1929, § 17215. This affords an accused a preliminary examination before a magistrate, opportunity to come face to face with accusers, to question them and to have knowledge of the evidence against him."

In *People v Wilcox,* 303 Mich 287, 295–296 (1942), this Court stated the advantage of a preliminary examination to the people as follows:

"The new criminal code, 3 Comp. Laws 1929, § 17193 (Stat. Ann. § 28.919), distinctly provides that the State and accused shall be entitled to prompt examination and determination by the examining magistrate in all criminal cases, et cetera. The State may be very much interested in determining whether or not there is sufficient probable cause to hold a respondent for trial, or it may desire to perpetuate the testimony in the event that a witness shall disappear or die before the trial. The rule is well expressed in *Van Buren v United States,* 36 Fed. 77, 82 [1888], from which we quote the following excerpt:

" 'The arrested party, sometimes when not guilty, in order to divert suspicion from others, but more frequently when guilty, and in order to aid the escape of confederates in the crime, is quite willing by waiving examination to suppress present inquiry; and oftener still, perhaps, this is done by the accused in the hope of suppressing the evidence against himself, or of gaining some like advantage from delay. An immediate develop-

ment of the evidence and testimony is sometimes essential to the ends of justice, and it would be strange indeed if the laws are so framed, or the courts disposed so to interpret them as to deny the government this important power. Its exercise, unless wantonly abused, as almost any power may be abused, can harm no one.' "

The nature and purpose of a preliminary examination is summed up in 21 Am Jur 2d, Criminal Law, § 443, pp 446–447, as follows:

"A preliminary examination before a magistrate is not a criminal prosecution or judicial trial of the accused. It is a mere judicial inquiry to determine whether there is 'probable cause' for the accusation, the nature of which is thereby made known to the accused.

"The primary purpose of a preliminary hearing is to ascertain whether there is reasonable ground to believe that a crime has been committed and whether there is just cause to believe the defendant committed it. Further purposes are said to be to perpetuate testimony, to determine the amount of bail to be given by the prisoner in case he is held for trial, to weed out groundless or unsupported charges of grave offenses, and to relieve the accused of the degradation and the expense of a criminal trial and of the deprivation of his liberty if there is no probable cause for believing that he is guilty of the crime."

Prior to organized police departments, the grand jury helped to find witnesses and collated community knowledge concerning a crime. However, in modern practice, a citizens' grand jury, consisting of laymen, may not understand the technical legal issues of a case or the rules of evidence. It must often rely upon the prosecutor as the sole legal interpreter allowed to aid it in its deliberations. Although it has the advantages of secrecy and the

power to compel the appearance of witnesses, its effective use would appear to be limited.[7]

The preliminary examination is keyed to modern methods of investigation carried on by the police and the prosecutors. A defendant's rights are recognized and evidentiary rules are followed. Recently a majority of this Court found in *People v Bellanca, supra,* 712, that:

"In Michigan the preliminary hearing is a judicial proceeding designed to establish probable cause that a crime has been committed and probable cause to believe the accused committed it. *It is a critical stage of our criminal process.*"(Emphasis added.)

There may well be serious questions of equal protection and due process involved in the present Michigan procedure, as counsel in these cases ably argue, since it denies to an accused indicted by a multiple-man grand jury what has become recognized as a fundamental right in most criminal cases—the right to a preliminary examination. Rather than attempting to rule on an issue of constitutional rights in these cases, we believe the better course is to exercise the inherent power of this Court to deal with the situation as a matter of criminal procedure, as was done in *People v Bellanca, supra.* We hold that in each case, and in all pending cases in which the right to a preliminary examination was asserted prior to trial and is presently being asserted, such right shall be accorded to the defendant. In all future cases wherein a defendant is accused of a felony, the right to a preliminary examination shall exist.[8]

The Court of Appeals is reversed in all three

---

[7] Miller, *Informations or Indictments in Felony Cases,* 8 Minn L Rev 379 (1923–1924); Mayers, *The American Legal System* (Harper & Row, NY 1964) pp 67–71. *Contra:* Scigliano, *The Grand Jury, the Information and the Judicial Inquiry,* 38 Or L Rev 303 (1959).

[8] The bench and bar are respectfully advised that, pursuing GCR

cases. The cases are remanded to the trial courts for further proceedings in accordance with this opinion.

T. M. KAVANAGH, C. J., and T. G. KAVANAGH, SWAINSON, and WILLIAMS, JJ., concurred with ADAMS, J.

T. E. BRENNAN, J. *(dissenting).* I dissent for the reasons given in the majority opinion. In particular, I adopt the following clear, concise and accurate statement of the law:

"The conclusion is inescapable that, in the absence of a clear statutory provision for a preliminary examination following presentment or an indictment by a grand jury, there has never been such a right."

Once again, the Court chooses to legislate by court rule, *even where it concedes that a statutory provision is necessary.*

Chief Justice Burger has proposed at the Federal level that the Congress prepare an "impact statement," outlining the effect of new rights upon the court system. If this Court persists in legislating, we ought to have the courtesy to adopt an "impact statement," setting forth the effect of our actions upon the public treasury.

BLACK, J., did not sit in this case.

---

1963, 933, the Court has this day notified the secretary of the State Bar and the Court Administrator of intent of the Court to consider, with view toward adoption, GCR 1963, 788, reading as follows:

"Rule 788. Preliminary Examination After an Indictment.

"Whenever an indictment shall be returned by a grand jury or a grand juror, the State and the person accused of a felony in such indictment shall be entitled to a preliminary examination before an examining magistrate unless such person shall waive his right to such examination. The procedure therefor shall be in conformity with Chapter VI of The Code of Criminal Procedure as far as applicable. This rule shall also apply to all pending cases in which the right to a preliminary examination has been and is presently being asserted."