Cavanagh, J.
(dissenting). This case is yet another example of what has become a favored process of overruling established precedent. By overruling the part of People v Duncan, 388 Mich 489; 201 NW2d 629 (1972), that affords indictees the right to a preliminary examination, the majority has stripped criminal defendants of a necessary procedure in Michigan’s *291 criminal process. In addition to its disregard for Michigan precedent, the majority predicts that the defendant “will be unable” to prove his equal protection claim if given access to the grand jury records, when the majority has not read the content of those records. Because I would not overrule Duncan and would affirm the Court of Appeals decision to unseal the grand jury records so that defendant might obtain evidence to support his constitutional claims, I respectfully dissent.
i
The majority states that in Duncan, this Court exceeded its rulemaking authority under Const 1963, art 6, § 5. The majority reasons that the right to a preliminary examination is substantive and policy based. Therefore, the majority believes that this case involves more than a matter of procedure, and should be decided on the basis of the will of the Legislature. Thus, the majority claims that Duncan can be lightly cast aside as an usurpation of legislative power. However, the text of Const 1963, art 6, § 5 clearly states the principle recognized by Duncan, that this Court has the exclusive power to establish rules of procedure.
Quoting the section from Duncan that discussed the possible equal protection violations in Michigan’s criminal procedure without affording an indictee the right to a preliminary examination, the majority summarizes the “policy” concerns this Court expressed when it established the right. Ante at 281. I disagree that due process considerations are “policy” concerns that we may not address when invoking our constitutional authority to establish procedure and that must *292 be left to the Legislature. Due process considerations play a role in both procedural and substantive aspects of the law, thus making it difficult to avoid balancing substantive concerns when we implement procedures. The majority, however, expands its abdication of judicial authority in McDougall v Schanz, 461 Mich 15; 597 NW2d 148 (1999), by defining the due process policy considerations we discussed in Duncan as substantive law and strictly within the province of the Legislature. This expansion of McDougall effectively eradicates our ability to weigh due process concerns when using our constitutional authority to establish procedure and shrinks the constitutional boundary that separates our rulemaking powers from those of the Legislature. Thus, I raise the concerns I articulated in my dissent from McDougall: what procedures, then, may this Court establish under Const 1963, art 6, § 5? Under the majority’s view in this case, “the Legislature would appear free to control any aspect of the judicial function it wishes, save perhaps the scheduling of dockets.” McDougall at 59, n 26. Moreover, the majority’s view raises the issue whether we must revisit all previous established court rules to determine whether there were “improper” policy considerations made behind them.[1]
The valid concerns that we addressed in Duncan describe the substantive consequences that follow from the absence of a preliminary examination after a *293 grand jury indictment Thus, it seems the establishment of the right to a preliminary examination after a grand jury indictment effectuates substantive justice by dismissing equal protection concerns and assuring due process for criminal defendants. The majority fails to separate the preliminary examination’s basic procedural nature in Michigan’s criminal process from the procedure’s substantive effects and concludes that the establishment of a preliminary examination is more than a matter of procedure. Ante at 282. Contrary to the majority’s conclusion, however, just because this Court used its constitutional power to establish a procedure in Michigan’s criminal process that has the effect of assuring substantive justice does not magically change the nature of the procedure to that of a substantive right.
In People v Bellanca, 386 Mich 708; 194 NW2d 863 (1972), this Court addressed whether a criminal defendant faced with perjury charges before a one-man grand jury was entitled to the transcripts of witness testimony before that one-man grand jury. Although the Legislature had allowed access to such transcripts in a traditional grand jury situation, no such right was established in a one-man grand jury situation. This Court held that regardless of the Legislature’s failure to add the right to grand jury transcripts in the statute governing one-man grand juries, both types of grand juries are of equal importance, and the reasoning behind allowing the right in the traditional grand jury setting applied in the one-man grand jury setting. This Court then proceeded to discuss what the majority in this case would likely label as mere “policy” concerns behind establishment of this right: because a criminal defendant is entitled to *294 effective assistance of counsel at this stage, to be truly effective, “counsel must be properly prepared for cross-examination of the prosecution’s witnesses and thus he must have access to the testimony of such witnesses before the grand jury touching on matters in issue at the examination.” Bellanca at 714. Accordingly, this Court held that “a defendant charged with perjury before a ‘one-man grand jury’ must have access to the transcripts of the testimony of all witnesses for or against him given before the ‘one-man grand juror’ in order to be accorded due process.” Id. at 712. To implement this holding, this Court treated the establishment of the right to grand jury records as a procedure and created MCR 6.107.[2]
Thus, in Bellanca, substantive concerns of due process pushed this Court to use its constitutional authority to establish a procedure in Michigan’s criminal process, the right to transcripts from the grand juror proceeding, which had the substantive effect of assuring due process. I do not doubt that, given the proper factual scenario, the majority would jump at an opportunity to strip yet another right afforded criminal defendants and overrule Bellanca, claiming we exceeded our rulemaking authority by creating a substantive right that is policy based. However, until that day, Bellanca remains primary authority for the proposition that this Court may validly establish pro *295 cedures, while considering the substantive effects of such procedures, under Const 1963, art 6, § 5.1, therefore, would hold that this Court was completely within its constitutional rulemaking authority in Duncan when it established that indictees are entitled to a preliminary examination.
n
I also dissent from the majority’s holding that it was an abuse of discretion for the Court of Appeals to order an in-camera inspection of the grand jury record. The purpose of the in-camera inspection was to allow defendant access to any possible evidence proving race discrimination. The majority denies defendant access to the grand jury record because it claims not only did defendant fail to prove a prima facie case of discrimination, but defendant will be unable to prove discrimination even with access to the record. In making this conclusion, the majority correctly states the requirements for proving a Fourteenth Amendment violation, which I agree defendant has not met. However, the majority takes its conclusion one step further and projects that defendant will be unable to prove a prima facie case because “upon further review of the grand jury proceedings ... he will be unable to establish a discriminatory purpose.” Ante at 285. To support its prediction of defendant’s future inability to prove discriminatory purpose, the majority states that defendant’s claim is currently premised on the disparate impact of the 6-6-5 grand jury composition, which is insufficient alone to prove discriminatory purpose. Ante at 285-286.
The majority’s reliance on this reason to support its prediction is misplaced because it is based solely on what was lacking in defendant’s first attempt to prove *296 the prima facie case. The evidence defendant has presented thus far and why it fails to prove a prima facie case of discrimination is irrelevant to what the grand jury records may provide in the future to prove the same claim.
Without the benefit of reading any additional information the grand jury record might provide, the majority hangs its hat on evidence that again has already been presented. Unlike the majority, I refuse to speculate on what evidence the grand jury records may contain. Perhaps the majority is correct and the record would reveal absolutely nothing to aid defendant in his constitutional claims. However, the majority could also be wrong, as the record would show how the grand jury venire was selected and thus could aid defendant in proving discriminatory intent behind the manner in which the grand jury was selected or composed. Whatever the result may be if defendant could investigate the record, however, cannot be predicted when we have not reviewed the record ourselves.
Contrary to the majority’s position, I recognize that our mission to rule justly, although time-consuming on certain occasions, should not be easily cast aside simply because the journey to such a result may come up fruitless. We should not shut down the avenues available to a defendant seeking a just result, especially on the basis of an unfounded prediction that defendant will not prevail. I, therefore, would affirm the Court of Appeals conclusion that, although defendant did not prove a prima facie case, he is entitled to a remand to unseal the grand jury record to obtain any evidence it may contain to support his constitutional claims.
Kelly, J., concurred with Cavanagh, J.

 As I stated in my dissenting opinion in McDougall at 59:
So we must wonder exactly how many of our court rules deal with items that might evoke considerations other than judicial dispatch, and thus be subject to alteration on the basis of those considerations, evidencing decisions of “substantive” law by the Legislature.

 MCE 6.107(A) states:
Whenever an indictment is returned by a grand jury or a grand juror, the person accused in the indictment is entitled to the part of the record, including a transcript of the part of the testimony of all witnesses appearing before the grand jury or grand juror, that touches on the guilt or innocence of the accused of the charge contained in the indictment.