(AFTER REMAND)
Weaver, J.
Following his waiver of preliminary examination, the defendant was bound over to Eaton Circuit Court on the charge of conspiracy to deliver 650 or more grams of cocaine. Defendant, who is black, seeks to challenge the composition of the mul-ticounty grand jury that indicted him, claiming that the selection process systematically excluded blacks from the multicounty grand jury. The prosecution responds that the information it filed after defendant waived preliminary examination purged any taint in the grand jury selection process.
On remand from this Court, the Court of Appeals rejected the prosecution’s argument and directed further proceedings on the selection issue, including the unsealing and inspection of certain grand jury documents that might be relevant to the claim of racial discrimination in selection of the composition of the grand jury.
We hold that this Court exceeded its criminal procedure rulemaking authority in People v Duncan, 388 Mich 489; 201 NW2d 629 (1972), by creating a substantive right to a preliminary examination for grand jury indictees. To the extent that Duncan exceeded this Court’s rulemaking authority, it is overruled and its implementing court rules are rejected.
As to defendant’s constitutional claims, we hold that he has not established and cannot establish a prima facie case of discrimination under either the Sixth or the Fourteenth Amendment. It was, there *272 fore, an abuse of discretion for the Court of Appeals to order an in-camera inspection of the grand jury record.
The judgment of the Court of Appeals is reversed in part, and this case remanded to the circuit court for further proceedings consistent with this opinion.
i
Upon a petition filed by Clinton, Eaton, and Ingham County prosecutors, the Court of Appeals on January 13, 1995, formed a multicounty grand jury under MCL 767.7b et seq. The grand jury was given jurisdiction over the three counties. The Court of Appeals order provided that the grand jury would consist of seventeen jurors: six from Ingham County, six from Eaton, and five from Clinton County. The court’s order granted the prosecutors’ motion to suppress the grand jury proceedings.
On April 27, 1995, the grand jury indicted the defendant on a charge of conspiracy to deliver 650 grams or more of cocaine.[1] The indictment alleged that the conspiracy took place in Eaton County. A felony warrant was issued by the circuit judge on assignment by the Court of Appeals to the mul-ticounty grand jury. Defendant was apparently arraigned on the indictment on May 12, 1995, and bond was set for $150,000.[2]
On September 8, 1995, the defendant appeared in the 56th District Court and waived preliminary examination on the indictment. Defendant was bound over *273 to the Eaton Circuit Court, and his papers were filed with that court on September 11, 1995. Defendant waived arraignment in the circuit court on September 27, 1995 or September 28, 1995.[3]
On September 29, 1995, the Eaton County prosecutor filed an information in circuit court. The information was identical to the indictment, again alleging conspiracy to deliver 650 grams or more of cocaine. Attached to the information was a list of witnesses. There is no record of a complaint and warrant or a separate preliminary examination or waiver in the district court before the filing of the information.
Trial was scheduled and adjourned several times. On February 21, 1996, the defendant moved to dismiss, alleging, among other things, that the composition of the grand jury violated his due process rights, his Sixth Amendment right to a jury selected from a fair cross section of the community, and his Fourteenth Amendment right to equal protection. As the Court of Appeals summarized his allegations:
Specifically, defendant indicated that the population of Clinton County is 3.85 percent African-American and 13.8 percent of the total population of the three counties, the population of Eaton County is 3.56 percent African-American and 21.47 percent of the total population of the three counties, and the population of Ingham County is 9.87 percent African-American and 65.16 percent of the total population of the three counties.3a Defendant thus contended that this Court’s order that five grand jurors be from Clinton County, six from Eaton County, and six from Ingham County amounted to a systematic overrepresentation of the counties with the smallest African-American population and a systematic underrepresentation of the county *274 with the largest African-American population. Defendant further contended that if proper percentages had been used, Clinton County would have had two grand jurors, Eaton County would have had four grand jurors, and Ingham County would have had eleven grand jurors.[4] In addition to arguing for dismissal, defendant requested that the trial court order the prosecution to produce a copy of the petition for the establishment of the multicounty grand jury.
[235 Mich App 455, 459-460; 597 NW2d 876 (1999).]
On March 12 and April 2, 1997, the circuit court held evidentiary hearings on defendant’s motion to dismiss. The Court of Appeals summarized the testimony at the hearing as follows:
Those witnesses who did testify shed little light on how the grand jury was selected and whether African-Americans were excluded from the grand jury.[5] The Eaton County deputy clerk and Ingham County deputy clerk indicated that their juror questionnaire did not contain questions pertaining to race. Both the Eaton County and Ingham County deputy clerks indicated that they did not know how the mul-ticounty grand jury was selected. A member of the Clinton County jury board indicated that two panels of potential petit jurors from Clinton County were assigned to the mul-ticounty grand jury pool. These panels were formed by use of the Secretary of State’s list of licensed drivers in Clinton County, mailing questionnaires to the licensed drivers, and the jury board’s review of the returned questionnaires to determine who could sit on the jury panels. Persons excluded were those who did not have appropriate citizenship, had a documented physical disability, were over the age of seventy, lacked competency, were currently under conviction of a felony; or served on a jury within the past *275 twelve months. The Clinton County juror questionnaire also did not include questions about race.
[Id. at 460461.]
The circuit court denied defendant’s motion to dismiss on the basis of racial discrimination in selection of the grand jury, concluding that the defendant had failed to establish that blacks were systematically excluded.
Defendant filed an application for leave to appeal from that decision, which the Court of Appeals denied.[4] The defendant filed an application for leave to appeal to this Court, and on September 25, 1997, we issued an order remanding the case to the Court of Appeals for consideration as on leave granted.
On remand, the Court of Appeals concluded that defendant had not established a prima facie case of racial discrimination under either the Sixth or Fourteenth Amendment because he had not provided evidence regarding the racial composition of the grand jury venire, had not shown that underrepresentation of blacks was due to systematic exclusion during the selection process, and had not shown that the grand jury selection procedure was racially biased or susceptible to abuse. Nevertheless, the Court of Appeals agreed with defendant that the grand jury records should be unsealed so that he might obtain evidence to support that claim.5a The Court of Appeals dissent *276 concluded that any errors in the grand jury selection or proceedings were harmless because the prosecutor proceeded by information in the circuit court.
n
Michigan law provides that criminal prosecutions may be initiated in the court having jurisdiction to hear the cause by either indictment or information. MCL 767.1 et seq. Throughout the record in this case, there is confusion regarding whether the defendant is in circuit court on the indictment or the information.[6] The record does reveal that the prosecution filed an information in the circuit court after the grand jury indictment had already been returned and the defendant bound over. The effect of the prosecutor’s decision to file an information after the defendant’s bindover on the grand jury indictment has raised questions involving the interplay of the statutes, case law, and court rules governing informations and indictments. In our order granting leave, we requested that the parties brief three issues in addition to grant *277 ing leave on the issues raised by the parties.[7] A brief overview of Michigan’s two criminal charging procedures provides context for the discussion and conclusions that follow.
A
Criminal prosecutions may be initiated in the court having jurisdiction over the charge upon the filing of an information. MCL 767.1 et seq.; People v Simon, 324 Mich 450, 456; 36 NW2d 734 (1949). An information is predicated upon a signed complaint and warrant. A complaint must state the substance of the accusation and reasonable cause to believe that the person accused committed the offense. MCL 764. Id.
The accused has a right to. a preliminary examination before the prosecutor files an information in the court having jurisdiction to hear the cause. MCL 767.42. The accused and the state are entitled to a “prompt” examination. MCL 766.1. The primary function of a preliminary examination is to determine if a crime has been committed and, if so, if there is probable cause to believe that the defendant committed it. People v Bellanca, 386 Mich 712; 194 NW2d 863 (1972). As to the timing of the preliminary examination, MCR 6.112(B) provides in pertinent part that
*278 [u]nless the defendant is a fugitive from justice, the prosecutor may not file an information until the defendant has had or waives preliminary examination.
Once an information has been filed, the prosecutor may not enter a nolle prosequi “or in any other way discontinue or abandon the same, without stating on the record the reasons therefore and without leave of the court having jurisdiction to try the offense charged, entered into its minutes.” Genesee Prosecutor v Genesee Circuit Judge, 391 Mich 115, 120; 215 NW2d 145 (1974).[8]
Criminal prosecutions may also be initiated by grand jury indictment. MCL 767.1 et seq.; MCR 6.112(B). Grand juries may be convened over two or more counties upon petition filed with the Court of Appeals by the Attorney General or by prosecuting attorneys from each county named in the petition and upon an order of the Court of Appeals. MCL 767.7b. The Court of Appeals may convene the requested grand jury if the petition establishes probable cause to believe that a crime, or portion thereof, has been committed in two or more of the named counties and if the petition establishes that a grand jury could “more effectively address” that alleged criminal activity. MCL 767.7d.
There is no state constitutional right to indictment by grand jury; rather, indictment by grand jury is an alternative charging procedure created by the Legisla *279 ture. In re Palm, 255 Mich 632; 238 NW 732 (1931). Grand juror names are “drawn in the same manner and from the same source as petit jurors.” MCL 600.1326. Indictment by grand jury establishes probable cause that a crime has been committed. Vasquez v Hillery, 474 US 254; 106 S Ct 617; 88 L Ed 2d 598 (1986). If an indictment is found, the foreperson presents the indictment to the court. MCL 767.25(1). The presiding judge then returns the indictment to the court having jurisdiction over the offense, where it is filed. MCL 767.25(3), (4). A prosecutor is prohibited from entering a nolle prosequi upon an indictment or discontinuing or abandoning an indictment without stating reasons on the record and without leave of the court having jurisdiction over the charge. MCL 767.29. The court to which the indictment is presented may issue a warrant for the arrest of the person indicted. MCL 767.30.
Duncan, supra at 502, granted indictees the right to a preliminary examination. In accordance with Duncan, MCR 6.110 provides a preliminary examination for a defendant indicted by a grand jury. Consistent with MCL 767.2; MCR 6.112(A) provides, except as otherwise provided by the court rules or elsewhere, “the law and rules that apply to informations and prosecutions on informations apply to indictments and prosecutions on indictments.” MCR 6.112(B) also provides that when an indictment is returned and filed before a defendant’s preliminary examination, “the indictment may substitute for the complaint and commence judicial proceedings.”[9] The *280 provision of subsection (B) reflects the requirement of Duncan, supra, that grand jury indictees be afforded a preliminary examination.
B
The confused procedural posture of this case raises fundamental questions regarding Michigan’s current dual charging procedures. As noted above, the indictment had been returned to circuit court and the defendant had waived preliminary examination in district court before the prosecutor filed the information in Eaton Circuit Court. There was no complaint and warrant filed to support the information. Nor did the prosecutor seek to abandon or discontinue the indictment.[10] Consistent with MCR 6.112(B), the prosecutor treated the grand jury indictment as nothing more than a complaint initiating criminal proceedings, despite MCR 6.112(A) and MCL 767.2, which treat *281 indictments as equivalent to informations. As a result of this confusion, we asked the parties to brief
whether this Court properly exercised its authority over criminal procedure in People v Duncan, 388 Mich 489 (1972), to grant defendants indicted by grand juries the right to a preliminary examination. [461 Mich 1005.]
As noted above, Duncan provided grand jury indictees with the right to a preliminaiy examination after indictment. The Court then adopted implementing court rules, MCR 6.110 and MCR 6.112. Pursuant to Const 1963, art 6, § 5, this Court has exclusive authority to determine the rules of practice and procedure. McDougall v Schanz, 461 Mich 15, 26; 597 NW2d 148 (1999). However, this Court’s constitutional rulemaking authority extends only to matters of practice and procedure:
[T]his Court is not authorized to enact court rules that establish, abrogate, or modify the substantive law. [Id. at 27.][11]
We now address whether Duncan and the implementing court rules were a proper exercise of the Court’s rulemaking authority.
Despite acknowledging that indicted defendants historically did not receive a preliminary examination, and that no statute so provided, Duncan declared such a right on the basis of policy. Regarding the significance of preliminaiy examination Duncan opined *282 that “[t]here may well be serious questions of equal protection and due process involved in the present Michigan procedure . . . since it denies to an accused indicted by a multiple-man grand jury what has become recognized as a fundamental right in most criminal cases — the right to a preliminary examination.” Id. at 502. Duncan expressly declined to rely on due process principles in creating the right to a preliminary examination for indictees. Rather than addressing those constitutional questions, this Court seized upon its “inherent power” to deal with the situation as a matter of criminal procedure and granted all defendants accused of a felony the right to a preliminary examination, even in those cases following indictment by a grand jury. Id,.[12] Rather than following the statutory scheme pertaining to prosecutions by indictment, Duncan instead rewrote it. We are persuaded that Duncan and the implementing court rules exceed this Court’s rulemaking authority. As this Court previously recognized:
The measure of control exercised in connection with the prevention and detection of crime and prosecution and punishment of criminals is set forth in the statutes of the State pertaining thereto, particularly the penal code and the code of criminal procedure. The powers of the courts with reference to such matters are derived from statutes. [People v Piasecki, 333 Mich 122, 143; 52 NW 626 (1952).[13]
The establishment of the right to a preliminary examination is more than a matter of procedure and *283 beyond the powers vested in the Court by Const 1963, art 6, § 5; it is a matter of public policy for the legislative branch. Shannon v Ottawa Circuit Judge, 245 Mich 220, 222; 222 NW 168 (1928); People v Piasecki, supra; Glancy v Roseville, 457 Mich 580, 590; 577 NW2d 897 (1998). Duncan and MCR 6.112(B) are also inconsistent with MCL 767.2, which provides for equivalency in the law between indictments and in-formations.
We overrule Duncan, insofar as it afforded indict-ees the right to a preliminary examination. Additionally, we hold that the information filed in this case is null and void because it was filed pursuant to the invalid scheme set forth in MCR 6.112(B) that purported to allow an indictment to substitute for a complaint. There was no complaint stating the substance of the accusation or reasonable cause to believe the accused committed the offense as required by MCL 764.Id, nor was there a preliminary examination on a complaint as required by MCL 767.42. Finally, the prosecution never sought to discontinue the indictment under MCL 767.29. Because the information is null and void, we do not address the effect a properly filed information might have on a previously returned indictment.[14] This case stands filed in the circuit court on the grand jury indictment. We next address the *284 defendant’s constitutional challenges to the grand jury proceedings.
hi
The grand jury was composed of seventeen people, six from Ingham County, five from Clinton County, and six from Eaton County. Defendant alleges that this composition violated his right to equal protection under the Fourteenth Amendment and his Sixth Amendment right to a fair cross section on the grand jury venire.
A
Defendant alleges that the seventeen member tricounty grand jury makeup of 6-6-5 from Eaton, Ingham, and Clinton Counties respectively violated his right to equal protection under the Fourteenth Amendment. There is no right to have a particular grand jury reflect the precise racial composition of a community. Akins v Texas, 325 US 398; 65 S Ct 1276; 89 L Ed 1692 (1945). Furthermore, discriminatory effect is insufficient to establish a violation of the Fourteenth Amendment; defendant must show discriminatory intent. People v Ford, 417 Mich 66, 103; 331 NW2d 878 (1982); Arlington Hgts v Metro Housing Dev Corp, 429 US 252, 265; 97 S Ct 555; 50 L Ed 2d 450 (1977); Washington v Davis, 426 US 229, 242-243; 96 S Ct 2040; 48 L Ed 2d 597 (1976). “Such an effect may permit an inference of an unlawful purpose, but, standing alone, it is not conclusive on the question whether governmental activity is racially discriminatory.” Ford, supra at 103.
*285 In order to establish a prima facie case of racial discrimination in the selection of a grand jury under the Fourteenth Amendment, in addition to showing discriminatory purpose, defendant must show that the grand jury selection procedure resulted in a “substantial underrepresentation of his race.” Castaneda v Partida, 430 US 482, 494; 97 S Ct 1272; 51 L Ed 2d 498 (1977). Castaneda articulated three steps to establish substantial underrepresentation. The defendant must show 1) that he belongs to a recognizable, distinct class singled out for different treatment under the laws as written or as applied; 2) that there was significant underrepresentation of that distinct class over a significant period of time; and 3) that the selection procedure was susceptible of abuse or that it was not racially neutral. Id. at 494. Once a defendant establishes a prima facie case, the burden shifts to the state to rebut the inference of intentional discrimination. Id. at 495.
We agree with the judgment of the Court of Appeals that defendant has not presented a prima facie case of discrimination under the Fourteenth Amendment.[15] We go further and hold that defendant will be unable to establish a prima facie case upon further review of the grand jury proceedings because he will be unable to establish a discriminatory purpose. Defendant does not challenge the manner in which the jury impaneling was implemented. Defendant’s claim is premised solely upon the allegedly disparate effect of the 6-6-5 composition of grand jurors *286 from the three counties chosen by the Court of Appeals. Defendant does not present any evidence suggesting a discriminatory purpose, and nothing in the grand jury records could conceivably aid defendant in his effort to prove that the Court of Appeals acted with discriminatory purpose in establishing the 6-6-5 split.
The possibility of an adverse effect on the representation of blacks resulting from the 6-6-5 composition is relevant to discriminatory purpose, but is insufficient alone to establish that it was a purposeful device to exclude blacks from the grand jury. Washington, supra at 239. We therefore conclude that defendant will be unable to establish a prima facie case of a discriminatory purpose in violation of the Fourteenth Amendment.
B
Defendant also alleges that the 6-6-5 composition of the grand jury denied him his Sixth Amendment right to an impartial jury drawn from a fair cross section of the community. To establish a prima facie violation of the fair cross section requirement, “a defendant must show that a distinctive group was underrepresented in his venire or jury pool, and that the under-representation was the result of systematic exclusion of the group from the jury selection process.” People v Smith, 463 Mich 199, 203; 615 NW2d 1 (2000), citing Duren v Missouri, 439 US 357; 99 S Ct 664; 58 L Ed 2d 579 (1979).[16]
*287 A preliminary issue is whether the fair cross section requirement applies to state grand jury venires. The Court of Appeals assumed it did, but this is the first state decision to hold that a defendant may challenge the grand jury selection process on the basis of the fair cross section requirement. 235 Mich App 465-466. It is well established that the Sixth Amendment fair cross section requirement applies to state petit jury venires. Taylor v Louisiana, 419 US 522; 95 S Ct 692; 42 L Ed 2d 690 (1975).[17] However, the Fifth Amendment does not require grand juries in state prosecutions, Hurtado v California, 110 US 516; 4 S Ct 111; 28 L Ed 232 (1884), and the United States Supreme Court has not imposed the fair cross section requirement on states that allow indictment by grand jury. See Castaneda, supra at 509-510 (Powell, J., dissenting). The Sixth Circuit has held that due process for the purposes of state grand jury selection does not include the fair cross section requirement. Ford v Seabold, 841 F2d 677, 687-688 (CA 6, 1988).
We need not decide whether Michigan should apply the fair cross section requirement to grand jury venires in this case because defendant has failed to allege a cognizable fair cross section claim. Defendant contends that Ingham County residents were underrepresented on the basis of the 1990 census figures. He argues that Ingham County should have had eleven positions on the grand jury rather than six. Defendant argues that the underrepresentation of *288 Ingham County residents had the effect of systematically underrepresenting blacks. However, the fair cross section requirement does not guarantee that any particular jury chosen will literally mirror the community; rather, “jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups . . . and thereby fail to be reasonably representative thereof . . . .” Smith, supra at 214 (opinion of Cavanagh, J.). Because defendant’s challenge is relevant to the make up of his particular grand jury, he cannot succeed on his claim.
c
Next we address whether the Court of Appeals erred when it ordered an in-camera inspection of the record bearing on the claim of racial discrimination in the selection and composition of the grand jury and lifted part of the suppression order initially entered regarding the grand jury records so as to permit additional testimony by county officials or employees. The Court of Appeals reasoned: “in order to establish evidence, if any, of his claim of racial discrimination under the Sixth or Fourteenth Amendments, there must be some access to the record or other evidence regarding the selection and composition of the grand jury.” 235 Mich App 472. The Court of Appeals concluded that there was no compelling reason to suppress information relating to “the racial composition of the multicounty grand jury venire and the grand jury, and the selection procedures used that produced the grand jury that indicted him.” Id. at 473. The Court of Appeals vacated its previous suppression order “to the extent that defendant’s claim . . . can *289 be explored and testified about by county officials or employees (such as those who would not previously testify).” Id. at 474.
Upon our review of defendants’ constitutional claims, we are resolved that the Court of Appeals abused its discretion by ordering the in-camera review and lifting the order of suppression. As in People v Wimberly, 384 Mich 62; 179 NW2d 623 (1970), we are faced with a conflict between the traditional reasons for secrecy of grand jury proceedings and the desirability of discovery. Because defendant cannot, upon further discovery, establish a prima facie case under either the Fourteenth or Sixth Amendment, we hold that the reasons for secrecy of grand jury proceedings outweigh the desirability of further discovery.
rv
The judgment of the Court of Appeals is reversed, and this case is remanded to the circuit court for proceedings consistent with this opinion.
Corrigan, C.J., and Young and Markman, JJ., concurred with Weaver, J.

 MCL 333.7401(2)(a)(i), 750.157a.

 Court of Appeals order setting bond and remanding case to the 56-2 District Court for further proceedings.

 Two copies of what appear to be one waiver arraignment appear in the record with these dates stamped by the Eaton County Clerk.

 These population figures are based on the 1990 census.

 Defendant also attached to his motion two affidavits from witnesses at the grand jury proceedings who stated that there were no African-Americans on the seventeen-person grand jury.

 We note that the Legislature requires that the names of grand jurors shall be drawn in the same manner and from the same source as petit jurors. MCL 600.1326.

 Unpublished order, entered July 21, 1997 (Docket No. 203592).

 The Court said that the defendant should request the grand jury record from the chief judge of the Court of Appeals, who was to conduct *276 an in-camera inspection and, “certify the parts of the record bearing on the issue of defendant’s claim of racial discrimination in the selection and composition of the grand jury . . . 235 Mich App 473. The Court directed a further evidentiary hearing in the circuit court on defendant’s claims. The Court also lifted part of the suppression order initially entered regarding the grand jury records so as to permit additional testimony by county officials or employees (some of whom had previously refused to testify).

 At oral argument before this Court, the prosecution indicated that no complaint and warrant had been filed and yet seemed to argue that the information was validly filed in circuit court, thus mooting any taint in the grand jury proceeding. During a July 17, 1997, hearing on the prosecution’s motion to endorse certain witnesses, the prosecutor stated that she was “not moving to amend the indictment.” At that same hearing however, defense counsel included in a brief outline of this case’s procedural history an “arraignment on the information.”

 We asked: (1) whether the prosecutor’s filing of an information under MCR 6.112 after the defendant waived the preliminary examination removed the taint of the alleged racial discrimination in the selection of the grand jury that indicted defendant, (2) whether MCR 6.112 conflicts with MCL 767.29, as construed in People v Curtis, 389 Mich 698; 209 NW2d 243 (1973), and (3) whether this Court properly exercised its authority over criminal procedure in People v Duncan, supra, to grant defendants indicted by grand juries the right to a preliminary examination.

 Genesee noted that MCL 767.29, which discusses obligations of a prosecuting attorney upon any indictment, also applies to prosecutions by information pursuant to MCL 750.10, which provides “the word ‘indictment’ includes information.” Further, Genesee noted that MCL 767.2 provides that all provisions of law applicable to prosecutions by indictment shall in general apply to prosecutions by information.

 This procedure, established by court rule and case law, is unique to Michigan. While our research reveals that twenty-eight states generally allow prosecutions by information or indictment and four other states *280 require indictment by grand jury only in cases involving the most serious felonies, only Michigan and Oklahoma, Okla Stat, tit 22, § 524; see also Stone v Hope, 488 P2d 616 (Okla Crim App, 1971), grant a defendant a right to a preliminary examination following indictment. LaFave, Israel & King, Criminal Procedure (2d ed), § 15.1(e), (g), pp 239-240, 250-252. Although Oklahoma allows for a second determination of probable cause, the indictment remains the charging document. In Oklahoma, the grand jury returns the indictment to the trial court. A copy of the indictment is filed with the magistrate for preliminary examination purposes. Any resulting bindover is on the indictment. The prosecutor may not replace the indictment with an information. Cunningham v Tulsa Co Dist Court, 399 P2d 57 (Okla Crim App, 1965). Michigan thus stands alone in treating the indictment as a mere pleading that initiates criminal proceedings.

 MCL 767.29 states that the prosecutor shall not discontinue or abandon the indictment “without stating on the record the reasons for the discontinuance or abandonment and without the leave of the court having jurisdiction to try the offense charged, entered in its minutes.” We asked the parties to brief “whether MCR 6.112 conflicts with MCL 767.29, as construed in People v Curtis, 389 Mich 698 [209 NW2d 243] (1973).” Because the indictment was not abandoned in this case, it is not necessary or appropriate to explore the interplay of Curtis and MCR 6.112.

 Contrary to the dissent’s assertion, McDougall in no way limits this Court’s constitutional authority to prescribe procedural rules that vindicate constitutional rights; rather, McDougall only precludes the promulgation of procedural rules contrary to legislative enactments that involve nonconstitutional substantive policies.

 Therefore, the dissent’s suggestion that Duncan relied on due process principles is incorrect.

 Obviously, this Court’s authority regarding the mies of practice and procedure derives from Const 1963, art 6, § 5, and is not subservient to the Code of Criminal Procedure. McDougall, supra, pp 26-27.

 Further, we asked the parties to brief:
[WJhether the prosecutor’s filing of an information under MCR 6.112 after defendant waived the preliminary examination removed the taint of the alleged racial discrimination in the selection of the grand jury that indicted defendant .... [461 Mich 1005.]
Because we hold the information is null and void, this harmless error issue is no longer relevant.

 We agree with the Court of Appeals that a defendant can challenge the grand jury selection process on Fourteenth Amendment equal protection grounds, notwithstanding MCL 767.13, 767.14, which the prosecutor argued precluded such challenges.

 In People v Smith, we held that no method for measuring whether representation was fair and reasonable should be used exclusively, but rather we adopted a case by case approach. We stated, “[pjrovided that *287 the parties proffer sufficient evidence, courts should consider the results of all the tests in determining whether representation [on the venire] was fair and reasonable.” Id. at 204.

 The right to a fair cross section in federal grand jury venires is derivative of the Fifth Amendment and 28 USC 1861. Id. at 528-529.