*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TODD DOUGLAS ROBINSON,

        Defendant-Appellant.

FOR PUBLICATION
June 13, 2024
9:10 a.m.

No. 365226
Jackson Circuit Court
LC No. 2012-003652-FC

Before: CAMERON, P.J., and N. P. HOOD and YOUNG, JJ.

YOUNG, J.

In 2013, a jury convicted Todd Douglas Robinson on one count each of first-degree premeditated murder, MCL 750.316(1)(a), and possession of a firearm during the commission of a felony (felony firearm), MCL 750.227b. As particularly relevant here, this case commenced in November 2012 when Robinson was charged of the aforementioned offenses via indictment by the presiding judge acting as a one-man grand jury, without any preliminary examination. A felony warrant was issued and the charges were filed in a felony information that same month. The trial court subsequently denied Robinson's request for a preliminary examination or, alternatively, to quash the information.

Robinson now appeals by delayed leave granted[1] the trial court's order denying his successive motion for relief from judgment. On appeal, Robinson contends that the trial court erroneously denied this motion because, after the Michigan Supreme Court's recent opinion in *People v Peeler*, 509 Mich 381; 984 NW2d 80 (2022), Robinson's charges and subsequent prosecution were void when the case commenced via indictment by a one-man grand jury, without a preliminary examination, thus depriving the trial court of subject-matter jurisdiction over the case. Robinson relatedly argues that *Peeler* applies retroactively, and the trial court committed

---

[1] See *People v Robinson*, unpublished order of the Court of Appeals, entered October 6, 2023 (Docket No. 365226).

legal error by concluding otherwise.[2]  Although the charging procedure here was improper under *Peeler* and the remaining subissues present a close call, we affirm because this error was harmless and did not deprive the circuit court of jurisdiction to proceed in the case.

## I. BACKGROUND

In previously affirming Robinson's convictions, this Court summarized the underlying facts as follows:

> [Robinson] was convicted of shooting and killing the victim as part of a drug deal involving promethazine.  The evidence against [Robinson] was both direct and circumstantial.  Two witnesses—Joe Kelley and Troy Heard, both long-time friends of [Robinson]—testified that the three men were playing their regular game of dominoes at Kelley's house.  Kelley testified that [Robinson] went to the kitchen to talk with someone, probably a man but Kelley did not know who it was, and went out the back door with the person.  Minutes later, Kelley heard a gunshot from "out back."  Heard went outside briefly, returned, and said he had to leave.  Kelley saw [Robinson] looking in his truck, saw a man he did not recognize lying down by the fence, and called 911.  On cross-examination, Kelley said that he did not see [Robinson] with a gun that night.

> Heard testified that someone knocked at the back door, and [Robinson] answered.  Heard identified the victim as being the man at the door.  [Robinson] and the victim were negotiating over the sale of promethazine. [Robinson] came back to the table, laid a gun on the table, and said "it ain't gonna go down like they think."  There was another knock at the back door and [Robinson] answered.  Heard then heard what sounded like a gunshot.  Heard looked out the kitchen window and saw [Robinson] move the victim to the fence.  As Heard was leaving, [Robinson] said that the victim drew a gun on him and walked him out of the house.  The next morning Detective Stiles went to Heard's house and Heard told a different story.  Later, Heard got arrested with a gun, and Stiles again came to see him.  Heard testified that he had a gun charge pending but expected nothing in exchange for his testimony at [Robinson]'s trial.  [*People v Robinson*, unpublished per curiam opinion of the Court of Appeals, issued June 9, 2015 (Docket No. 317282), pp 1-2.]

After this Court affirmed Robinson's convictions, he moved in propria persona for relief from judgment, making various arguments irrelevant here.  The trial court denied the motion, and both this Court and the Michigan Supreme Court denied Robinson's applications for leave to

---

[2] This Court recently decided in *People v Kennedy*, ___ Mich App ___; ___ NW3d ___ (2023) (Docket No. 363575) (*Kennedy I*), that *Peeler* does apply retroactively.  *Id*. at ___; slip op at 2, 5, 7.  However, the Supreme Court vacated this Court's judgment in *Kennedy I* on May 31, 2024. *People v Kennedy*, ___ Mich ___; ___ NW2d ___ (2024) (Docket No. 166594) (*Kennedy II*).

appeal concerning the motion, *People v Robinson*, unpublished order of the Court of Appeals, entered August 16, 2019 (Docket No. 348424); *People v Robinson*, 505 Mich 1039 (2020).

Later, on July 20, 2022, Robinson filed a second pro se motion for relief from judgment, this time in light of the Michigan Supreme Court's recent decision in *Peeler*, 509 Mich 381. *Peeler* held that MCL 767.3 and MCL 767.4, the one-man grand jury statutes, do not allow a judge to issue indictments in criminal proceedings. *Id*. at 386-387, 395-400. The Court also held that defendants are entitled to a preliminary examination "if a criminal process begins with a one-man grand jury." *Id*. at 386-387, 400.

Robinson argued that relief from judgment was warranted under MCR 2.612(C)(1)(d) (judgment is void) because he was indicted by one-man grand jury and without a preliminary examination contrary to *Peeler*. Robinson asserted that the circuit court therefore never acquired jurisdiction in this case, rendering "his subsequent trial and conviction[s]" "null and void." Robinson emphasized that MCR 2.612(C)(1)(d) provides authority to declare a conviction void when—as here—the court lacked jurisdiction over the case. Robinson argued that relief was also warranted under MCR 6.502(G)(2) because *Peeler* effectuated a change in law after he first moved for relief from judgment, and because *Peeler* should have retroactive effect. He also alleged prejudice by the improper procedure.

Without holding a hearing, the trial court denied Robinson's motion. The court acknowledged the recent change in law under *Peeler*, but disagreed that this entitled Robinson to relief. It reasoned:

> There is no [caselaw] that has decided whether *Peeler* is to be retroactive or prospective. Although it is true that the general rule is that judicial decisions are to be given complete retroactive effect, prospective application of judicial decisions [is] limited to decisions which overrule clear and uncontradicted [caselaw]. *Hyde v Univ of Mich Bd Of Regents*, 426 Mich 223, 240; 393 NW2d 847 (1986). Since the *Peeler* decision overruled *Green*,[3] [Robinson] is not entitled to relief from judgment under MCR 5.502(G)(2).

> Even if the *Peeler* decision could be applied retroactively, [Robinson] has still not met his burden for relief from judgment under MCR 6.508(D)(3)(b). [Robinson] has not established that if a preliminary examination had occurred, there would have been a reasonably likely chance of acquittal. [Robinson] was convicted by a jury and there is no evidence to show that a preliminary examination would have changed the outcome of the jury trial.

Robinson now appeals.

---

[3] See *People v Green*, 322 Mich App 676; 913 NW2d 385 (2018), overruled in part by *Peeler*, 509 Mich 381.

## II. STANDARD OF REVIEW

"We review a trial court's decision on a motion for relief from judgment for an abuse of discretion[.]" *People v Swain (On Remand)*, 288 Mich App 609, 628; 794 NW2d 92 (2010). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes, or [it] makes an error of law[.]" *Id*. at 628-629 (citations omitted).

## III. ANALYSIS

Robinson contends that the trial court erroneously denied his successive motion for relief from judgment because, following *Peeler*, his charges and subsequent prosecution were void when the case commenced via indictment by a one-man grand jury, without a preliminary examination, thus depriving the trial court of subject-matter jurisdiction over the case. According to Robinson, this lack of jurisdiction renders the judgment here void, such that his requested relief was warranted. Robinson relatedly argues that *Peeler* applies retroactively, and the trial court committed legal error by concluding otherwise.

## A. GENERAL LAW AND KEY CASES; *PEELER*'S RETROACTIVITY

"A defendant in a criminal case may move for relief from a judgment of conviction and sentence." *Swain (On Remand)*, 288 Mich App at 629, citing MCR 6.502(A). "Such motions are governed by MCR 6.500 *et seq*." *Id*. "A defendant has the burden to establish entitlement to relief." *Id*. at 630, citing MCR 6.508(D). Under MCR 6.508(D)(3), a court is precluded from granting relief if the motion

> alleges grounds for relief, *other than jurisdictional defects*, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates
>
> > (a) good cause for failure to raise such grounds on appeal or in the prior motion, and
> >
> > (b) actual prejudice from the alleged irregularities that support the claim for relief. As used in this subrule, "actual prejudice" means that,
> >
> > > (i) in a conviction following a trial,
> > >
> > > (A) but for the alleged error, the defendant would have had a reasonably likely chance of acquittal[.]
>
> * * *
>
> The court may waive the "good cause" requirement of subrule (D)(3)(a) if it concludes that there is a significant possibility that the defendant is innocent of the crime. [Emphasis added.]

-4-

"A defendant is only entitled to file one motion for relief from judgment." *Swain (On Remand)*, 288 Mich App at 631, citing MCR 6.502(G)(1). However, MCR 6.502(G)(2) permits the filing of a successive motion under two circumstances:

A defendant may file a second or subsequent motion based on a retroactive change in law that occurred after the first motion for relief from judgment or a claim of new evidence that was not discovered before the first such motion.

"Because a successive motion for relief from judgment may only be filed if, after the first motion, there is a retroactive change in the law or new evidence is discovered, the 'good cause' and 'actual prejudice' requirements of MCR 6.508(D)(3) are not relevant until, and are only relevant if, the trial court determines that the successive motion falls within one of the two exceptions of MCR 6.502(G)(2)." *Swain (On Remand)*, 288 Mich App at 632-633.

As an initial matter, we conclude that *Peeler* did not involve a retroactive change in the law, so Robinson is not entitled to relief from judgment on this basis. In Michigan, "the general rule is that judicial decisions are to be given complete retroactive effect." *League of Women Voters of Mich v Secretary of State*, 508 Mich 561, 565; 975 NW2d 840 (2022) (quotation marks and citation omitted). "However, where injustice might result from full retroactivity, this Court has adopted a more flexible approach, giving holdings limited retroactive or prospective effect." *Id.*; see also *People v Barnes*, 502 Mich 265, 268; 917 NW2d 577 (2018) ("[J]udicial decisions which express new rules normally are not applied retroactively to other cases that have become final. New legal principles, even when applied retroactively, do not apply to cases already closed[] because at some point, the rights of the parties should be considered frozen and a conviction . . . final.") (quotation marks and citation omitted; omission in original).

Therefore, in determining retroactivity, courts must first address "[t]he threshold question" of "whether a decision amounts to a new rule of law." *League of Women Voters of Mich*, 508 Mich at 566. "A rule of law is *new* for purposes of resolving the question of its retroactive application . . . either when an established precedent is overruled or when an issue of first impression is decided which was not adumbrated by any earlier appellate decision." *Id.* (quotation marks and citation omitted; omission in original).

Concerning the specific effect of *Peeler* at issue here, this Court's analysis in *People v Walker*, 328 Mich App 429; 938 NW2d 31 (2019), is insightful:

A judicial decision's rule is considered to be new if it breaks new ground or imposes a new obligation on the States or the Federal Government. In other words, a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final. [*Id.* (quotation marks and citations omitted).]

Importantly, *Peeler*'s holdings did not establish any new rule because the Court did not announce a new rule that was not dictated by precedent. Instead, *Peeler*'s decision was based on the proper interpretation of longstanding statutory authority in existence since well before Robinson's indictment and conviction in this case. See *People v Phillips*, 416 Mich 63, 67-75; 330 NW2d 366 (1982) (The Supreme Court's opinion in *People v Dunigan*, 409 Mich 765; 298

-5-

NW2d 430 (1980), did not announce a new rule of law because "[t]he right to [a preliminary examination] enforced in *Dunigan* has existed since 1859 . . . "; therefore, the trial court properly granted the defendant a new trial "because this juvenile defendant was not given the examination he timely demanded," even though *Dunigan* did not explicitly apply this right to the class of juvenile defendants until after the defendant in *Phillips* was convicted.).

Given the foregoing, we cannot conclude that *Peeler* effectuated "a retroactive *change in law*" to warrant granting Robinson's successive motion for relief from judgment on this basis under MCR 6.502(G)(2) (emphasis added). Although Robinson was improperly subjected to indictment by a one-man grand jury without a preliminary examination, he could and should have challenged this procedure in his initial appeal before this Court. The questions remain, however, concerning whether the one-man-grand-jury procedure utilized here and contrary to *Peeler* necessarily deprived the circuit court of subject-matter jurisdiction over Robinson's case, and whether this provides an alternative basis to grant Robinson's successive motion for relief from judgment.

In *People v Washington*, 508 Mich 107; 972 NW2d 767 (2021), the Supreme Court addressed a claim of jurisdictional error raised in the defendant's successive motion for relief from judgment, which the trial court had granted. *Id*. at 113, 116. The Supreme Court first discussed whether the trial court having earlier erroneously resentenced the defendant while his appeal from a final order was pending "is an error of subject-matter jurisdiction." *Id*. at 121. "Subject-matter jurisdiction is a legal term of art that concerns a court's authority to hear and determine a case." *Id*. "This authority is not dependent on the particular facts of the case but, instead, is dependent on the character or class of the case pending." *Id*. (quotation marks and citations omitted). "The courts do not have inherent subject-matter jurisdiction; it is derived instead from [this state's] constitutional and statutory provisions." *Id*.

Under Michigan's 1963 Constitution, circuit courts have "original jurisdiction in all matters not prohibited by law . . . ." Const 1963, art VI, § 13. MCL 600.601 similarly states:

> (1) The circuit court has the power and jurisdiction that is any of the following:
>
> (a) Possessed by courts of record at the common law, as altered by the state constitution of 1963, the laws of this state, and the rules of the supreme court.
>
> (b) Possessed by courts and judges in chancery in England on March 1, 1847, as altered by the state constitution of 1963, the laws of this state, and the rules of the supreme court.
>
> (c) Prescribed by the rules of the supreme court.

The *Washington* Court stated, "In construing these provisions, we have recognized that circuit courts have subject-matter jurisdiction over felony cases." *Washington*, 508 Mich at 121-122, citing *People v Lown*, 488 Mich 242, 268; 794 NW2d 9 (2011) ("Michigan circuit courts are courts of general jurisdiction and unquestionably have jurisdiction over felony cases.") and

-6-

MCR 6.008(B) ("The circuit court has jurisdiction over all felonies from the bindover from the district court unless otherwise provided by law.").[4]

Moreover, the *Washington* Court observed that "there is a widespread and unfortunate practice among both state and federal courts of using the term 'jurisdiction' imprecisely, to refer both to the subject-matter and the personal jurisdiction of the court, and to the court's general authority to take action." *Washington*, 508 Mich at 124. It also explained the type of language that Michigan courts use to discuss jurisdictional defects as compared to errors in the exercise of jurisdiction:

> Although the usage of these terms is not wholly consistent, generally, the terms "vest" and "jurisdiction" are used to refer to the existence of jurisdiction. See, e.g., *Paley v Coca Cola Co*, 389 Mich 583, 599[;] 209 NW2d 232 (1973) (discussing the subject-matter jurisdiction of the circuit court and using the terms "vest," "vested," and "jurisdiction" rather than "power" or "authority"); *Campbell v St John Hosp*, 434 Mich 608, 613-614[;] 455 NW2d 695 (1990) (same); *Davis v Dep't of Corrections*, 251 Mich App 372, 374, 378[;] 651 NW2d 486 (2002) (same). In contrast, the terms "power" and "authority" are generally used to refer to errors in the exercise of jurisdiction and other nonjurisdictional errors. See, e.g., *People v Comer*, 500 Mich 278, 292-293[;] 901 NW2d 553 (2017)[5] (discussing a trial court's nonjurisdictional error using the language "authorized" and "authority" rather than "vest" and "jurisdiction"). [*Id*. at 125 n 5.]

The Court ultimately concluded that the trial court lacked subject-matter jurisdiction when it resentenced the defendant while his appeal was pending. *Id*. at 129. Moving to what relief, if any, was warranted, the Court noted "a longstanding rule that defects in a court's subject-matter jurisdiction render a judgment void *ab initio*"—i.e., from the beginning. *Id*.; see also *In re Ferranti*, 504 Mich 1, 22; 934 NW2d 610 (2019) ("[W]hen there is a want of jurisdiction over the parties, or the subject-matter, no matter what formalities may have been taken by the trial court, the action thereof is void because of its want of jurisdiction, and consequently its proceedings may be questioned collaterally as well as directly."). "[T]his Court has also recognized that courts are bound to take notice of the limits of their authority and act accordingly." *Washington*, 508 Mich at 130. "Courts may take such action at any point in the proceedings—whether in the trial court,

---

[4] See also MCL 600.151 ("The judicial power of the state is vested exclusively in 1 court of justice which shall be divided into 1 supreme court, 1 court of appeals, *1 trial court of general jurisdiction known as the circuit court*, 1 probate court, and courts of limited jurisdiction created by the legislature.") (emphasis added); MCL 767.1 ("[C]ircuit courts of this state . . . and any court of record having jurisdiction of criminal causes[] shall possess and may exercise the same power and jurisdiction to hear, try and determine prosecutions upon informations for crimes, misdemeanors and offenses, . . . and do all other acts therein as they possess and may exercise in cases of like prosecutions upon indictments.").

[5] This case was superseded by statute on other grounds, as stated in *People v Pendergrass*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 362218); slip op at 4.

on direct appeal, or on collateral attack—and by their own initiative or upon motion of the parties." *Id.*

Next, the *Washington* Court specifically rejected the prosecution's argument that such a jurisdictional defect cannot be raised in a successive motion for relief from judgment. *Id.* at 130-132. It reasoned:

> The prosecutor is correct that a lack of subject-matter jurisdiction is not encompassed by either of MCR 6.502(G)(2)'s exceptions to the successive-motion bar of MCR 6.502(G)(1). However, the restrictions on a trial court's authority contained in MCR 6.500 *et seq.* are not implicated here because these provisions only limit a court's ability to review a "judgment of conviction and sentence," and as already discussed, our caselaw establishes that the trial court's judgment of sentence, rendered when the trial court lacked subject-matter jurisdiction, was void *ab initio*. Thus, there was no valid sentence to review, and MCR 6.501 does not limit a trial court's ability to recognize a subject-matter jurisdiction error and remedy it.
>
> Rather, upon [the] defendant's raising of the issue, the trial court had the duty to recognize its lack of subject-matter jurisdiction and act accordingly. In light of these longstanding rules, the trial court did not err when it granted relief to [the] defendant. The trial court's judgment of sentence was void and [the] defendant's failure to raise the issue on direct appeal, on his first motion for relief from judgment, or in a habeas petition cannot render the judgment of sentence valid. Unlike other errors that a defendant eventually loses the ability to raise, the lack of subject-matter jurisdiction cannot be ignored for purposes of finality because the existence of subject-matter jurisdiction goes to the trial court's very authority to bind the parties to the action at hand. The trial court acted in accordance with its duty to recognize its lack of subject-matter jurisdiction. Therefore, although MCR 6.502(G)(2) does not contain an exception for jurisdictional errors, the trial court did not err when it vacated its earlier judgment of sentence and set the matter for resentencing. [*Id.* at 131-132 (citations omitted).]

Notably, the Supreme Court in *People v Scott*, ___ Mich ___; ___ NW3d ___ (2024) (Docket No. 164790), recently distinguished *Washington* to conclude that "interlocutory appeals do not divest the trial court of its subject-matter jurisdiction" and "[any] error arising during or from the taking of an interlocutory appeal is subject to subsequent appellate review following entry of the final order." *Id.* at ___; slip op at 2-3. In doing so, the Court reasoned that the trial court's failure to comply with an automatic stay during an interlocutory appeal was "a procedural error" that did not affect subject-matter jurisdiction because, unlike the right to appeal from a final order at issue in *Washington* and "expressly recognize[d]" in Michigan's constitution, "[i]nterlocutory appeals have no constitutional pedigree." *Id.* at ___; slip op at 18, 22; see also *id.* at ___; slip op at 18-29. "Interlocutory appeals simply do not implicate our Constitution and therefore remain outside the scope of jurisdictional concern." *Id.* at ___; slip op at 24.

As stated above and reinforced by the preceding authority, the key issue here is the effect of *Peeler* on Robinson's indictment and the subsequent proceedings that led to his conviction—

specifically, whether the improper procedure utilized here necessarily deprived the circuit court of subject-matter jurisdiction in this case and rendered its judgment void. We must also decide whether Robinson is entitled to relief from judgment because of the improper procedure.

Here, Robinson does not provide any substantive argument on appeal regarding good cause or prejudice under MCR 6.508(D)(3), instead entirely basing his requested relief on the circuit court's purported lack of subject-matter jurisdiction and his charges and convictions therefore being void. Indeed, MCR 6.508(D)(3)'s requirements to show good cause and prejudice do not relate to jurisdictional errors. So *if* the one-man-grand-jury indictment did deprive the circuit court of subject-matter jurisdiction here, no showing of good cause or prejudice would be needed. And under *Washington* (and *Ferranti*), such a defect in the court's jurisdiction would render the restrictions of MCR 6.500 *et seq.* inapplicable and the judgment itself void, such that the trial court had the duty to recognize—and should have recognized—its lack of jurisdiction. See *Washington*, 508 Mich at 131-132. But the parties dispute whether the procedure deemed improper in *Peeler* implicates or affects jurisdiction. To resolve the jurisdictional issue, we first turn to *Peeler*.

*Peeler*, 509 Mich 381, involved three defendants—all state employees charged for their roles in the Flint water crisis—challenging in interlocutory appeals their indictments by a one-man grand jury. *Id*. at 386-389.[6] *Peeler* held that MCL 767.3 and MCL 767.4, the two one-man grand jury statutes, do not allow a judge to issue indictments in criminal proceedings. *Id*. at 386-387, 395-400. The Court also held that defendants are entitled to a preliminary examination "if a criminal process begins with a one-man grand jury." *Id*. at 386-387, 400.

On the first issue, the Court specifically addressed "[w]hether MCL 767.3 and MCL 767.4 confer charging *authority* on a member of the judiciary . . . ." *Id*. at 389 (emphasis added). After construing the statutory language, the Court concluded, "MCL 767.3 and MCL 767.4 authorize a judge to investigate, subpoena witnesses, and issue arrest warrants. But they do not authorize the judge to issue indictments." *Id*. at 400. "The trial court therefore erred by denying [the defendant] Lyon's motion to dismiss." *Id*.

The Court likewise interpreted the one-man-grand-jury statutes as providing a right to a preliminary examination. *Id*. at 391-394. In doing so, the Court stated that "judge[s] should treat the one-man-grand-jury-charged case the same as a case in which a formal complaint has been filed." *Id*. at 392. "We know how that process works too: When a formal complaint is filed, an arrest warrant is issued, the accused is apprehended, and the court holds a preliminary examination before an information may issue."[7] *Id*. "The circuit court [therefore] erred by denying [the defendant] Peeler's and [the defendant] Baird's motions to remand for a preliminary

---

[6] As indicated by the circuit court's order on remand in *Peeler*, discussed next, the consolidated Flint water cases involved seven different defendants, but only the three mentioned were involved in the challenges on appeal.

[7] See also MCL 767.42(1) ("An information shall not be filed against any person for a felony until such person has had a preliminary examination therefor, as provided by law, before an examining magistrate, unless that person waives his statutory right to an examination.").

examination." *Id.* at 395. The Court ultimately reversed the trial court's orders denying Peeler's and Baird's motions to remand and Lyon's motion to dismiss, and remanded "for further proceedings consistent with th[e Court's] opinion." *Id.* at 400.[8]

## B. ADDITTIONAL CASELAW AND APPLICATION

It is admittedly a close call whether the improper indictment procedure here deprived the circuit court of subject-matter jurisdiction and necessarily rendered the court's judgment void, with related authorities seemingly diverging on—and not clearly addressing—this issue. To reach a conclusion on this matter, we rely on cases dealing with errors both in indictments and informations, the two analogous charging procedures provided by the Legislature. See *People v Glass (After Remand)*, 464 Mich 266, 276; 627 NW2d 261 (2001) ("Michigan law provides that criminal prosecutions may be initiated in the court having jurisdiction to hear the cause by either indictment or information.").

Well before it decided *Peeler*, the Michigan Supreme Court in *In re Elliott*, 315 Mich 662; 24 NW2d 528 (1946), stated that "[t]he circuit court does not lose jurisdiction[] where a void or improper information is filed." *Id.* at 675. More recently, the Supreme Court stated as follows:

> The circuit court is a court of general jurisdiction, having original jurisdiction in all matters not prohibited by law . . . . Subject matter jurisdiction is presumed unless expressly denied by constitution or statute. It is the right of the court to exercise jurisdiction over a class of cases, such as criminal cases. In personam jurisdiction is vested in the circuit court upon the filing of a return of the magistrate before whom the defendant waived preliminary examination, or before whom the defendant had been examined. Having once vested in the circuit court, personal jurisdiction is not lost even when a void or improper information is filed. *In re Elliott*, [315 Mich] at 675. [*People v Goecke*, 457 Mich 442, 458-459; 579 NW2d 442 (1998) (quotation marks and citations omitted; omission in original).]

The Supreme Court in a later case held that "the information filed in this case is null and void because it was filed pursuant to the invalid scheme set forth in MCR 6.112(B) that purported to allow an indictment to substitute for a complaint." *Glass (After Remand)*, 464 Mich at 283. Because the information was null and void, the Court declined to consider arguments related to harmless error. *Id.* at 283 & n 14. The Court never specifically addressed whether or how this

---

[8] On remand, the circuit court in *Peeler* expressed some confusion regarding what the Supreme Court intended that it should do. The circuit court ultimately concluded that "[b]ecause the one-person grand jury does not have the power to issue indictments, the indictments [here] were void *ab initio*[, and] anything arising out of the invalid indictments are [sic] irreconcilably tainted from inception." The court stated further that "the charging process was invalid from its inception and issuance of an arrest warrant after an invalid indictment is irrelevant to our consideration. Because the charging procedure in this matter was invalid, remand for a preliminary examination would be improper. Simply put, there are no valid charges to remand for preliminary examination. Therefore, this Court must dismiss the charges against Defendants."

error affected the circuit court's jurisdiction, however, and merely "remanded . . . for proceedings consistent with th[e Court's] opinion." *Id*. at 289.

In contrast, *People v Cherry*, 27 Mich App 672; 183 NW2d 857 (1970),[9] framed a challenge to an amended information, which this Court rejected, as specifically implicating the circuit court's jurisdiction. *Id*. at 675-676. We also acknowledge Robinson's reliance on *People v Curtis*, 389 Mich 698; 209 NW2d 243 (1973), which determined in relevant part that "the trial court could not gain jurisdiction over [a] higher charge based on [an] erroneous information" because "[t]he court's jurisdiction was limited to that offense specified in the return made by the examining magistrate." *Id*. at 708. Notably, neither case specifies whether they were addressing a lack of personal jurisdiction, a lack of subject-matter jurisdiction, or an error in the circuit court's exercise of jurisdiction.

Admittedly, *Glass (After Remand)* arguably supports that the improper charging procedure here, like that in *Glass (After Remand)*, rendered the indictment null and void, while *Cherry* and *Curtis* indicate that errors in an indictment or information implicate a court's jurisdiction in some way. But none of these cases clearly hold or otherwise indicate that such errors deprive the circuit court of jurisdiction, whether subject-matter or personal. Indeed, such would be contrary to our Supreme Court's prior declarations, at least with respect to informations, that jurisdiction is unaffected by a "void or improper" charging document. See *Goecke*, 457 Mich at 458-459; *In re Elliott*, 315 Mich at 675. With all that in mind, we now turn to the specific improper procedure at issue here and disallowed by *Peeler*.

As an initial matter, we are not bound by the circuit court's interpretation of *Peeler* on remand in that case, nor do we read our Supreme Court's opinion in *Peeler* as implicating subject-matter jurisdiction. First, both parties misconstrue *Peeler*. The *Peeler* Court neither specifically instructed for any preliminary examination on remand, nor did it indicate that dismissal in particular was warranted. Rather, the Court merely indicated that the trial court erred by denying one defendant's motion to dismiss, and two other defendants' motions for a preliminary examination. It provided no clear instruction for how the circuit court should address these separate errors on remand.

Importantly, *Peeler* includes no indication whatsoever that its holdings relate to a court's jurisdiction, whether subject-matter or personal. *Peeler* never uses the word jurisdiction except in quoting exact excerpts from MCL 767.3 and MCL 767.4 not relevant here, see *Peeler*, 509 Mich at 391-392, nor any other terms like "vest" or "vested" that would implicate reference to *the existence* of jurisdiction, see *Washington*, 508 Mich at 125 n 5. Instead, the Court referenced the trial court's charging *authority*, thus supporting that the improper charging procedure was an error

---

[9] Although we are not required to follow cases decided before November 1, 1990, see MCR 7.215(J)(1), a published case decided by this Court "has precedential effect under the rule of stare decisis," MCR 7.215(C)(2). See also *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018) (stating that although this Court is not "strictly required to follow uncontradicted opinions from this Court decided before November 1, 1990," those opinions are nonetheless "considered to be precedent and entitled to significantly greater deference than are unpublished cases.").

*in the exercise* of jurisdiction or some other nonjurisdictional error. See *id*. And our Supreme Court never said that the improper procedure rendered the indictments in *Peeler* void. For the foregoing reasons, we conclude that an indictment via one-man grand jury, although erroneous under *Peeler*, does not deprive the circuit court of subject-matter jurisdiction. Therefore, the judgment here was not void for a lack of jurisdiction.

We also find that the error here did not deprive the trial court of subject-matter jurisdiction because it was "procedural." See *Scott*, ___ Mich at ___; slip op at 18. Like the issue in *Scott* and unlike in *Washington*, Michigan does not provide any *constitutional* right to a preliminary examination. *People v Hall*, 435 Mich 599, 603; 460 NW2d 520 (1990) ("[T]he preliminary examination is not a procedure that is constitutionally based."); *People v Johnson*, 315 Mich App 163, 200 n 7; 889 NW2d 513 (2016) ("[A] preliminary examination is not a constitutionally based procedure . . . ."). And the filing of an indictment, like the filing of an information after a preliminary examination, is governed not by any constitutional provision or right, but by statute. See MCL 767.45. Expanding on this analysis, we conclude further that reversal is unwarranted because the improper procedure utilized here constitutes harmless error. See *Hall*, 435 Mich at 612 (applying harmless error to prohibit automatic reversal for errors in preliminary examination proceedings); *Johnson*, 315 Mich App at 200 n 7 ("[A]ny errors that occur at a preliminary examination will be deemed harmless if the defendant is subsequently convicted at an otherwise fair trial."). Here, Robinson makes no argument regarding prejudice resulting from the error at issue, nor has he shown any errors that affected his actual trial. Because Robinson was also duly convicted by a jury in this case, any error in the indictment or preliminary examination process does not warrant reversal.

In sum, because the challenged error was harmless and did not deprive the circuit court of jurisdiction to proceed in the case, Robinson has failed to show entitlement to relief from judgment. As a final note, our conclusion that the improper procedure here did not deprive the circuit court of subject-matter jurisdiction is further supported by analogous authority from the United States Supreme Court and other states' courts. See *United States v Cotton*, 535 US 625, 630; 122 S Ct 1781; 152 L Ed 2d 860 (2002) ("defects in an indictment do not deprive a court of its power to adjudicate a case"); *State v Ortiz*, 162 NH 585, 589-590; 34 A 3d 599 (NH, 2011) ("[A] defective indictment does not deprive a trial court of its power to adjudicate a case. While a defect may be error—or even constitutional error, . . . the defect does not divest [a trial court] of the power to try the case.") (quotation marks and citation omitted; omission and alteration in original); *State v Maldonado*, 223 Ariz 309; 223 P 3d 653 (Ariz, 2010) ("We hold that the State's failure to file an information before trial did not deprive the superior court of subject matter jurisdiction or constitute fundamental error."); *Sate v Gentry*, 363 SC 93, 101; 610 SE2d 494 (SC, 2005) ("[S]ubject[-]matter jurisdiction of the circuit court and the sufficiency of the indictment are two distinct concepts and the blending of these concepts serves only to confuse the issue. Circuit courts obviously have subject[-]matter jurisdiction to try criminal matters.").

Affirmed.

/s/ Adrienne N. Young
/s/ Thomas C. Cameron
/s/ Noah P. Hood

-12-